# In the United States Court of Federal Claims

No. 17-67L

(Filed: March 27, 2020)

```
*************************************
                                    *
UNITED AFFILIATES CORPORATION       *
AND MINGO LOGAN COAL LLC,           *
                                    *  Motion to Compel; Fifth Amendment
                      Plaintiffs,   *  Takings   Claim;   Protective   Order;
                                    *  Discovery Dispute; Relevance; Privilege;
v.                                  *  High-Ranking   Government   Officials;
                                    *  Constitutional Challenge; Administrative
THE UNITED STATES,                  *  Record; Administrative Procedure Act.
                                    *
                      Defendant.    *
                                    *
*************************************
```

*Kevin P. Holewinski*, with whom was, *Daniella Einik*, Jones Day, Washington, D.C., for Plaintiff United Affiliates Corporation. *Robert M. Rolfe*, with whom was *George P. Sibley, III*, Hunton Andrews Kurth LLP, Richmond, Virginia, for Plaintiff Mingo Logan Coal LLC.

*Joshua P. Wilson*, with whom were, *Lucinda Bach*, and *Dustin Weisman*, Natural Resource Section, *Prerak Shah*, Acting Deputy Assistant Attorney General, Environment & Natural Resources Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## DISCOVERY ORDER

WHEELER, Judge.

Before the Court are the United States' motion for a protective order and Plaintiffs' motion to compel. In its motion, the Government asserts that Plaintiffs United Affiliates Corporation and Mingo Logan Coal, LLC ("Plaintiffs") made discovery requests that seek material beyond the scope of Plaintiffs' takings claims, impose undue burdens, and target privileged communications. Therefore, the Government argues that it is entitled to a protective order pursuant to Rule 26(c) of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiffs contend that their discovery requests are relevant to their takings claims and assert that the Government's privilege arguments are not ripe until they

provide a privilege log.  Therefore, Plaintiffs seek an order compelling the Government to produce the requested materials.  For the reasons discussed below, the Government's motion for a protective order is DENIED and Plaintiffs' motion to compel is GRANTED in part.

Background

On March 31, 1992, Plaintiffs Mingo Logan and United Affiliates entered into a lease.  Compl. ¶ 20.  The lease allows Mingo Logan to operate a coal mine in West Virginia known as Spruce No. 1.  Id.  United Affiliates owns Spruce No. 1.  Id. at ¶ 14.  In 2007, the Army Corps of Engineers ("Corps") issued a permit to Mingo Logan pursuant to § 404 of the Clean Water Act.  Id. at ¶ 42.  Section 404 deals with the discharge of dredged or fill material and vests the Corps with the authority to grant and revoke permits.  33 U.S.C. § 1334(a)–(b).  The permit at issue allowed Plaintiffs to discharge fill material from the Spruce No. 1 coal mine into several nearby streams.  Compl. ¶ 42–48.

Section 404(c) grants the EPA concurrent authority to prohibit, restrict, or withdraw the issuance of a permit.  33 U.S.C. § 1344(c).  In 2011, the EPA revoked the permit specification of the Pigeonroost and Oldhouse Branch streams as disposal sites, preventing Plaintiffs from discharging into them.  Compl. ¶ 3.  These streams and their tributaries accounted for 88 percent of the total discharge area that had been authorized under the original permit.  Id.  The EPA's withdrawal of the specification of disposal sites after the Corps issued a valid permit is unprecedented in the history of the Clean Water Act.  Id.

Plaintiff Mingo Logan previously filed a suit in the United States District Court for the District of Columbia alleging that the EPA's decision to withdraw the permits violated the Administrative Procedure Act ("APA").  See Mingo Logan Coal Co. Inc. v. EPA, 850 F. Supp. 2d 133, 134 (D.D.C. 2012).  The district court held that the EPA lacked the authority under § 404(c) of the Clean Water Act to modify or revoke existing permits issued by the Corps.  Id. at 134.  On appeal, the D.C. Circuit reversed the district court, finding that under the Clean Water Act the EPA had the authority to withdraw the two streams from the Corps permit.  See Mingo Logan Coal Co. v. EPA, 714 F.3d 608, 616 (D.C. Cir. 2013).

In 2017, United Affiliates and Mingo Logan initiated this action, asserting the Court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491.  In this case, Plaintiffs allege that the EPA's permit revocation constituted both a categorical taking and a regulatory taking.  Compl. ¶ 10–11.  According to Plaintiffs, the permit revocation (1) prohibited Plaintiffs' ability to engage in the authorized activities that had been specifically granted by the Corps, (2) resulted in millions of dollars of damages and significantly reduced the property's value, (3) "dramatically overturned" Plaintiffs' reasonable expectations which they formed after receiving the permits, and (4) unduly shifted the costs to Plaintiffs.  Id.

On August 30, 2019, the Government produced its initial disclosures and a copy of the administrative record compiled by the EPA for the D.C. District and D.C. Circuit cases. Dkt. No. 55-3 at 4. On November 12, 2019, Plaintiffs served on the Government a request for additional documents not included in the administrative record. Dkt. No. 55-1. In response, on January 13, 2020, the Government served its objections to Plaintiffs' requests. Dkt. No. 56 at 7. Plaintiffs note that the Government used the same generic objection for a majority of the discovery requests. Id. at 8–9.

After the parties failed to arrive at a compromise, the Government filed a motion for a protective order to limit discovery. Dkt. No. 55. The Government objected to the categories of requested documents, stating that many categories were "already represented in the administrative record." Dkt. No. 56-2 at 3. Specifically, the Government sought a protective order for three categories of information:

> (1) extra-record communications and materials underlying the Environmental Protection Agency's (EPA) Clean Water Act § 404(c) action . . .; (2) communications involving EPA Administrators, other high level EPA officials or White House personnel concerning the § 404(c) Action . . . ; and (3) communications of EPA's office of counsel concerning legal matters related to the § 404(c) Action.

Dkt. No. 55 at 5.

Following the Government's motion, Plaintiffs filed a motion to compel production of the requested documents and a privilege log. Dkt. No. 56. In their motion, Plaintiffs aver that "the law in fact does not limit discovery in a regulatory taking case to the underlying administrative record." Dkt. No. 56 at 7. Moreover, Plaintiffs argue that the Government's privilege claims are not ripe. At this juncture, without a privilege log, Plaintiffs argue that it is impossible to test the sufficiency of the Government's privilege claims. As a result, Plaintiffs request that the Court compel the Government to produce a privilege log as required by Rule 26 and the parties' November 19, 2019 stipulated discovery order. Dkt. No. 53-2 at 4–5; Dkt. No. 54.

## Discussion

### I.   Administrative Record

Claims brought under the APA are generally limited to "the administrative record already in existence, not some new record made initially with the reviewing court." Knowledge Connections, Inc. v. United States, 79 Fed. Cl. 750, 759 (2007) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)). Thus, under the APA, supplementation of the administrative record "should be limited to cases in which the 'omission of extra-record evidence precludes effective judicial review.'" Axiom Resource Mgmt., Inc. v. United

<u>States</u>, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (quoting <u>Murakami v. United States</u>, 46 Fed. Cl. 731, 735 (2000)).

However, "[w]here constitutional rights are in issue an independent examination of the record will be made in order that the controlling legal principles may be applied to the actual facts of the case." <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 580 n.2 (1968) (Douglas, J., concurring). The Fifth Amendment to the U.S. Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. "The purpose of the takings clause is to prevent 'Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" <u>Air Pegasus of D.C., Inc. v. United States,</u> 424 F.3d 1206, 1212 (Fed. Cir.2005) (quoting <u>Penn Cent. Transp. Co. v. City of N.Y.,</u> 438 U.S. 104, 123 (1978)). Thus, in takings cases, the record is not limited to the administrative record already in existence.

To state a claim for a taking under the Fifth Amendment's just compensation clause, the plaintiff must establish that it was the owner of the property and that the United States took the property for a public purpose. <u>See</u> <u>Acceptance Ins. Cos., Inc. v. United States</u>, 583 F.3d 849, 854 (Fed. Cir. 2009); <u>Shanghai Power Co. v. United States</u>, 4 Cl. Ct. 237, 239–40 (1983). Whether there has been a taking depends largely upon the particular circumstances in each case. <u>See</u> <u>Penn Central</u>, 438 U.S. at 124; <u>Loretto v. Teleprompter Manhattan CATV Corp.,</u> 458 U.S. 419, 426 (1982) (courts "must engage in 'essentially ad hoc, factual inquiries'" to determine whether a unique takings case has arisen (citations omitted)). In other words, the Court must weigh all relevant factors to determine whether Plaintiffs' loss is one that in all fairness and justice ought to be shifted to the public rather than be shouldered by Plaintiffs alone. <u>See</u> <u>Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency</u>, 535 U.S. 302, 326 (2002); <u>Belk et al. v. United States</u>, 858 F.2d 706, 709 (Fed. Cir. 1988).

The Government maintains that the takings claim should be evaluated based on the agency's § 404(c) administrative record. According to the Government, allowing extra-record discovery would "subvert the administrative process and disrupt the Agency's presumption of regularity." Dkt. No. 60 at 12. The Government submits that the administrative record provides Plaintiffs with the necessary facts to put on their case. In the Government's view, Plaintiffs are improperly seeking to use a Tucker Act takings claim to collaterally attack the agency's decision to withdraw § 404(c) permits; an issue that was already fully litigated. Dkt. No. 55 at 9–10. The Government further argues that even if Plaintiffs are entitled to extra-record discovery, it would be unduly burdensome to obtain it. Finally, the Government says that the discovery requests aimed at the past four EPA Administrators and current and former White House officials—who they argue did not participate in the analysis underlying the EPA's § 404(c) Action or sign the EPA's Final Determination—are not relevant.

Plaintiffs dispute the Government's characterization and assert that the extra-record evidence is relevant to their claims. For example, Plaintiffs argue that this evidence is necessary to demonstrate the character of the government action and prove Plaintiffs' reasonable investment-backed expectations. Dkt. No. 59 at 3. Plaintiffs emphasize that a constitutional taking and agency action that is improper under the APA are "two separate wrongs" and require courts to use different factors to evaluate the character of the Government's conduct. Dkt. No. 56 at 13–14 (citing Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1331 (Fed. Cir. 2006) and Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1364 (Fed. Cir. 1998)). The Court agrees. The issue in the previous case concerned whether the agency had the requisite authority to revoke permits under § 404(c) of the Clean Water Act, and if that decision was arbitrary and capricious. See Mingo Logan Coal Co., 70 F. Supp. 3d 151, 166 (D.D.C. 2014), aff'd sub nom. Mingo Logan Coal Co., 819 F.3d 710 (D.C. Cir. 2016). Here, the Court must address distinct issues, such as "the ease with which any harm stemming from [EPA's permit revocation] could be prevented." Rose Acre Farms, Inc., 559 F.3d at 1283.

In this case, plaintiffs are not arguing that the permit withdrawal was contrary to the agency's authority under § 404(c) of the Clean Water Act. In fact, Plaintiffs concede that they must accept the EPA's action as valid. Dkt. No. 56 at 10–11. Rather, Plaintiffs' discovery requests are tailored to help them prove that the EPA's permit withdrawal constituted a taking of their property rights, requiring compensation under the Takings Clause. See McDougal v. Cty. of Imperial, 942 F.2d 668, 680 (9th Cir. 1991) ("The legitimacy of the public interest involved, how much it is furthered by the regulatory actions at issue, the extent of the public benefit obtained expected . . . typically cannot be assessed properly without a factual record.").

Accordingly, takings principles, not the APA, provide the governing legal framework for determining whether Plaintiffs are entitled to discovery at this time. Under this framework, the Plaintiffs are entitled to discovery that extends beyond the already-existing administrative record.

II.    Relevancy

The Court's objective is to be sure that all relevant information will be available at the time of trial. Courts construe relevance more broadly during discovery than for trial. See Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986). At this time, because the Court has not reviewed the documents at issue, it is impossible for the Court to adequately assess each item's relevance. Therefore, the Court will determine whether Plaintiffs have "shown probable cause for discovery of the documents" without considering the applicability of the Government's privilege claims, which, as explained below, the Government has not properly invoked. Ford Motor Co. v. United States, 84 Fed. Cl. 168, 170 (2008).

RCFC Rule 26(b)(1) provides that a party, unless limited by the Court, may obtain discovery of any matter relevant to the claim or defense of a party that is not privileged. "Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court." Florsheim Shoe Co. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984); see also Heat & Control, 785 F.2d at 1024. The party seeking discovery must specify "what information it seeks" and explain why "the information sought would not be obtainable from some other source that is more convenient, less burdensome, or less expensive." Sys. Fuels, Inc. v. United States, 73 Fed. Cl. 206, 218 (2006).

The Government contends that the Plaintiffs' document requests and interrogatories seek information that is irrelevant because it will not assist the Court's analysis of the "character of the government action." Dkt. No. 60 at 8. The Government argues that "any predecisional discussions and subjective opinions of EPA personnel regarding whether the Agency should use its § 404(c) authority—or whether it would be 'legal' to do so—are irrelevant and superseded by the EPA's Final Determination, and the legal judgments upholding it." Id. The Government opines that Plaintiffs' requests are an attempt to contradict the underlying D.C. Circuit ruling which upheld the validity of the EPA's § 404(c) action. Dkt. No. 60 at 12.

Plaintiffs counter that the discovery requests go "to the heart" of the first prong of a takings analysis under Penn Central, which looks at the character of the government action. Dkt. No. 56 at 11. Plaintiffs state that the evidence suggests the EPA imposed severe retroactive liability, which the documents they requested are likely to confirm. Dkt. No. 59 at 7–8; see also E. Enterprises v. Apfel, 524 U.S. 498, 500 (1998). Moreover, in Plaintiffs' view, due to the unprecedented nature of the EPA's action, the agency's "analysis, purpose, and reasoning" in making the § 404(c) determination are highly relevant to their takings claim, particularly in establishing Plaintiffs' reasonable investment back expectations. Dkt. No. 56 at 12–13.

The Court has determined that the discovery requests are relevant and potentially necessary to the just resolution of this action. Plaintiffs' request for productions, interrogatories, and requests for admission do not pose an undue burden, particularly considering Plaintiffs' willingness to narrow their requests. Dkt. No. 59 at 8–9 ("[I]nstead of negotiating the scope of individual requests—which Plaintiffs remain open to doing in good faith—the government has unilaterally decided that almost all discovery outside the Administrative Record for the § 404(c) action is not relevant under Rule 26."). Documents underlying the EPA's § 404(c) withdrawal could potentially be relevant to the extent that they demonstrate whether the agency foresaw any retroactive liability. Plaintiffs are entitled to know whether the Government considered the takings implications of the § 404(c) permit withdrawal. See Exec. Order No. 12630, 53 Fed. Reg. 8859; CIT Grp./Equip. Fin., Inc. v. United States, 24 Cl. Ct. 540, 542 (1991).

III.   Privilege

The Court has broad discretion to manage discovery. See Brubaker Amusement Co. v. United States, 304 F.3d 1349, 1356 (Fed. Cir. 2002). RCFC Rule 37 permits a party to "move for an order compelling an answer, designation, production, or inspection." RCFC 37(a)(3)(B). Under RCFC 34, a party may request production of any document within the scope of discovery. See RCFC 34(a). A document that is "nonprivileged" and "relevant" to any party's claim or defense is considered within the scope of discovery. RCFC 26(b). To withhold information under a privilege claim, the withholding party must provide a log describing the withheld documents, so that a court and the challenging party may adequately assess the privilege claims. See RCFC 26(b)(5)(A); Confidential Informant 59-05071 v. United States, 108 Fed. Cl. 121, 133 (2012).

The Government argues that even if Plaintiffs' discovery requests are relevant, the information is protected by the work product doctrine, deliberative process privilege, and the attorney-client privilege. See Dkt. No. 55-3. In response, Plaintiffs argue that they seek communications from more than just attorneys. Dkt. No. 59 at 10–12. For example, Plaintiffs highlight William Early's role as both Regional Counsel for the EPA and Acting Regional Administrator, noting that "his profession alone does not shield his documents from discovery." Id. at 6 n.3. Plaintiffs further allege that the Government's blanket privilege assertions are not ripe for review until a privilege log is exchanged. Id. at 10–12. As a result, Plaintiffs ask the Court to require the Government to produce a privilege log identifying the nature of the withheld documents and the privilege asserted. Id. at 11–12.

The Government has the burden to prove that privilege applies to each document or redaction for which it is claimed. Deseret Mgmt. Corp. v. United States, 76 Fed. Cl. 88, 91 (2007); Vaughn v. Rosen, 523 F.2d 1136, 1144–47 (D.C. Cir. 1975). Until the Government provides a privilege log, the Court cannot reach the issue of whether the withheld information is privileged. Accordingly, at this time, the Court will not compel the production of the documents that the Government claims are privileged. The Government must provide a privilege log prior to making any further privilege claims. Plaintiffs may renew their motion upon receipt of the Government's privilege log.

IV.   Protective Order

The Government asserts that even if the information requested is relevant and unprivileged, much of it should still be subject to a protective order pursuant to RCFC 26(c). Dkt. No. 55 at 17–18. Under RCFC 26(c), the Court may, for "good cause," issue an order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." Lakeland Partners, L.L.C. v. United States, 88 Fed. Cl. 124, 132 (2009). The party seeking to shield itself from discovery has the burden to establish "good cause." Ford Motor Co., 84 Fed. Cl. at 170. Broad allegations of harm, without

specific examples, are insufficient to establish good cause.  See Lakeland Partners, 88 Fed. Cl. at 133; Forest Prod. Nw., Inc. v. United States, 62 Fed. Cl. 109, 114 (2004).

The Government contends that Plaintiffs' requests for documents involving "high-ranking government officials" are not allowed absent "extraordinary circumstances."  Id. at 18.  The Government further argues that discovery is not permitted until Plaintiffs establish the government officials' personal involvement in or first-hand knowledge of the analysis underlying the EPA's action.  Id. at 17.  Plaintiffs respond that the Government fails to cite a case requiring Plaintiffs to pre-emptively show a high-ranking official's personal involvement in the challenged decision when requesting documents.  Dkt. No. 59 at 13–14.

It is well established that there is a need to limit access to high-ranking government officials during the discovery process.  See, e.g., United States v. Morgan, 313 U.S. 409, 421 (1941); Sweeney v. Bond, 669 F.2d 542, 546 (8th Cir. 1982).  The rationale is that these officials "have greater duties and time constraints than other witnesses."  Bogan v. City of Bos., 489 F.3d 417, 423 (1st Cir. 2007).  This limitation, however, focuses on deposing high-ranking officials and is not absolute.  See Simplex Time Recorder Co. v. Sec'y of Labor, 766 F.2d 575, 586 (D.C. Cir. 1985) ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions.");  cf. Clinton v. Jones, 520 U.S. 681, 704 (1997) (noting that "[s]itting Presidents have responded to court orders to provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty").

Contrary to the Government's suggestion that Plaintiffs bear the burden of establishing an official's personal involvement, it is the Government that must demonstrate good cause for the issuance of a protective order.  See Ford Motor Co., 84 Fed. Cl. at 170.  Notably, the cases relied on by the Government all deal with a plaintiff's request to depose high-ranking officials.  Dkt. No. 55 at 18.  In those cases, the burden was on the plaintiff to establish the official's personal knowledge of the facts at issue.  See In re United States, 542 F. App'x. 944 (Fed. Cir. 2013).  Not all discovery requests involving high-ranking officials are subject to this high standard.  For example, in Alexander v. FBI, the court explained that "[i]f plaintiffs wish to question these [high-ranking] individuals, the submission of interrogatories by plaintiffs is the appropriate manner in which to initially proceed to determine whether these individuals have *any* knowledge relevant to the misuse of government files."  186 F.R.D. 1, 5 (D.D.C. 1998).

At this juncture, the Government has failed to identify specific reasons to support its request for a protective order.  The Government argues that Plaintiffs' discovery requests are "disproportionately burdensome" and seek "categorically privileged documents," but fails to substantiate these assertions with specific facts or explanations.

Dkt. No. 60 at 15–16.  A mere showing that discovery may involve some inconvenience or expense does not establish good cause to warrant a protective order under RCFC 26(c).

Conclusion

For the reasons stated above, Plaintiffs' motion to compel is GRANTED in part. Plaintiffs are entitled to evidence outside of the administrative record; however, the Court reserves ruling on any privilege claims until those claims are ripe and the parties appropriately brief the privilege arguments.

The Government's motion for a protective order is DENIED without prejudice.  The Government is directed to produce responsive non-privileged documents outside the § 404(c) administrative record and submit a privilege log on or before April 27, 2020.  Once Plaintiffs receive the privilege log, they may renew any discovery requests relating to those documents.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge