# In the United States Court of Federal Claims

No. 17-67 L

Filed: June 21, 2021

|  |  |
|---|---|
| UNITED AFFILIATES CORPORATION and MINGO LOGAN COAL LLC, | ) ) ) ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| *Defendant*. | ) ) ) |

*Kevin P. Holewinski*, Jones Day, Washington, D.C., for Plaintiff United Affiliates Corporation. *Daniella A. Einik*, of counsel.

*Robert M. Rolfe*, Hunton & Williams LLP, Richmond, VA, for Plaintiff Mingo Logan Coal LLC. *George P. Sibley*, III, of counsel.

*Joshua P. Wilson*, U.S. Department of Justice, Environment and Natural Resources Division, Natural Resources Section, Washington, D.C., with whom were *Jean E. Williams*, Deputy Assistant Attorney General, *Lucinda Bach*, *Hannah O'Keefe*, and *Erika Norman*, of counsel, for the Defendant.

## OPINION AND ORDER

**MEYERS, Judge.**

Plaintiffs object to the Government's assertion of various privileges in response to their written discovery requests. First, Plaintiffs seek wholesale revision of an undefined set of the Government's privilege logs based on alleged deficiencies. Because Plaintiffs' motion is either moot or unripe, the Court will not order the Government to revise its privilege logs again until Plaintiffs identify which log entries they object to, the basis for each objection, and confer with the Government about those challenged entries. Second, Plaintiffs argue that the Government cannot assert the deliberative process privilege because of the nature of Plaintiffs' claim. This argument, based on other Circuit precedent, is not viable under the Federal Circuit's precedent. Finally, Plaintiffs argue that the Government's assertion of the deliberative process privilege, if allowed, fails to meet procedural and substantive requirements and has been waived. Because the Government's assertion of the privilege does not satisfy procedural requirements, the Court will require it to produce new declarations asserting the privilege properly. The Government has not waived the privilege.

I.  **BACKGROUND**[1]

Following an approximately ten-year application process and an extensive environmental impact study, the Government granted Plaintiffs a permit in 2007 pursuant to the Clean Water Act that allowed Plaintiffs to conduct mining and disposal operations at a site in West Virginia known as Spruce No. 1. By 2011, however, the Government's view of coal mining shifted. As a result, the Government revoked Plaintiffs' permit, which was necessary for them to operate at Spruce No. 1. This lawsuit followed.

It did not take long for discovery disputes to arise. Plaintiffs filed a motion to compel the production of documents outside the administrative record of the Government's revocation of the permit. *United Affiliates Corp. v. United States*, 147 Fed. Cl. 412, 415-16 (2020). The Court granted-in-part Plaintiffs' first motion to compel and ordered the production of documents outside the administrative record and a privilege log within 30 days. *Id.* at 420-21. The Court also found that Plaintiffs could challenge privilege claims after receiving the Government's privilege log. *Id.* at 421.

Today's dispute focuses on those privilege claims, which include claims of attorney-client privilege, the work product doctrine, and the deliberative process privilege. In June 2020, Plaintiffs sent the Government a letter objecting to the alleged lack of required information in its privilege logs. ECF No. 80 at 6.[2] For these deficiencies, Plaintiffs provided the Government with examples of log entries that they believed to be deficient, but Plaintiffs never provided a list of all the log entries they objected to. Plaintiffs also claimed that the official that asserted the deliberative process privilege was not the appropriate official to assert the privilege over certain documents. *Id.* While the Government did not agree, it acknowledged that there were issues with the privilege logs resulting from the accelerated schedule and a glitch in the way the Government's review platform generated its logs. There was no dispute that the Government needed to amend its logs and it agreed to do so. *See id.* The Government expected the corrected privilege logs would take three weeks to generate and produce. *Id.* at 6-7.

Roughly two weeks later, Plaintiffs filed their second motion to compel. ECF Nos. 69-70. As expected, the Government produced its corrected privilege logs the following week and believed these logs resolved Plaintiffs' objections. ECF No. 71 at 1 ¶ 2; ECF No. 80 at 12; ECF No. 80-6 at 2-3. The Court then granted a joint motion to amend the schedule so the Parties could confer and determine what objections, if any, remained. *See* ECF No. 72. Rather than withdraw their motion, Plaintiffs filed a supplemental memorandum, ECF No. 75, raising the same arguments as before but with new exemplars of the alleged deficiencies.[3] It does not appear that Plaintiffs ever raised these specific log entries with the Government prior to their

---

[1] Because this opinion deals with a discovery dispute and the facts of this matter are presented at length in the Court's prior decisions, *see* 143 Fed. Cl. 257 (2019) & 147 Fed. Cl. 412 (2020), the background included here is that relevant to the resolution of the pending motion.

[2] Citations to docket items cite to the page numbers in the ECF Header.

[3] This case was transferred to the undersigned shortly after the Parties finished briefing the second motion to compel.

supplemental briefing.  The Government has since revised its privilege logs to address these newly identified log entries as well.

After the Court heard argument on Plaintiffs' second motion, the Government called the Court's attention to the Supreme Court's decision in *United States Fish & Wildlife Service v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021).  ECF No. 91 at 1.  To allow the Parties the chance to address what impact, if any, *Sierra Club* has on their arguments regarding the deliberative process privilege, the Court allowed supplemental briefing.

## II.  Plaintiffs' objections to the Government's privilege logs are partially moot and the remainder are not yet ripe.

A few words on the history of the privilege log disputes in this matter are warranted before reaching the merits of Plaintiffs' arguments.  Rather than proceeding in an orderly fashion, these disputes have progressed like a never-ending game of Whac-a-Mole.  Given the Government's willingness to continue addressing Plaintiffs' objections without Court intervention, it is hard to understand how the meet-and-confer process would not have resolved many, if not all, of Plaintiffs' objections.  *See* RCFC 37(a)(1).  But three things are clear.  First, the Government has been and remains willing to resolve Plaintiffs' objections to its log entries.  Second, there is a strong likelihood that Plaintiffs will soon file a third motion to compel.  Finally, there will *not* be a fourth.

The party withholding documents from discovery must deliver a privilege log that describes each withheld document and contains sufficient information to "enable" the remaining parties and the Court to "assess the [privilege] claim."  RCFC 26(b)(5); *see also Deseret Mgmt. Corp. v. United States*, 76 Fed. Cl. 88, 91 (2007).  Plaintiffs argue that many of the Government's privilege log entries do not comply with RCFC 26(b)(5) because there is insufficient information to assess the Government's privilege claims.  *See generally* ECF No. 75 at 14-19.  For its part, the Government has acknowledged and corrected errors in the log entries Plaintiffs specifically identified.  But the Government rejects the notion that it must make wholesale revisions to an undefined set of log entries within its revised privilege logs because its entries generally comply with RCFC 26(b)(5).

The crux of the problem here is that Plaintiffs object to broad categories of deficiencies and provided only exemplar log entries to the Government.  *See* ECF No. 75 at 14-19; *see also* ECF No. 70 at 15-19.  When Plaintiffs have provided exemplars, the Government has addressed them relatively quickly.  But then Plaintiffs provided new exemplars that they said needed correction, and the Government has fixed them also.  In fact, for every specific log entry Plaintiffs identified in their briefing thus far, the Government has already addressed the deficiencies.  Hearing Tr. 23:2-9, 41:17-25.  As to the objections to these log entries, Plaintiffs' motion is moot.

But Plaintiffs have never provided the Government a set of objections that identifies each log entry that Plaintiffs challenge.  To the extent Plaintiffs challenge other log entries, those objections are not yet ripe.  Reasonable minds may differ as to whether Plaintiffs object to a given log entry.  Indeed, this Court has not been able to determine with any degree of confidence what specific log entries Plaintiffs object to, so it cannot fault the Government for the same

3

inability. Even Plaintiffs are unable to state which or how many log entries they object to. Hearing Tr. 25:6-10. But Plaintiffs acknowledge that they "can go back . . . and do that work" to identify the entries they object to. *Id*.

While Plaintiffs may want to avoid the cost and effort this work requires, there is no other viable option. Among the Court, Plaintiffs, and the Government, Plaintiffs are the ones best suited to figure out what they object to. It is certainly not the Court's responsibility to determine what Plaintiffs object to. *See, e.g., Hughes v. B/E Aerospace, Inc.*, No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do."). Although it is true that the Government must provide sufficient information for Plaintiffs and the Court to determine whether the privilege applies, RCFC 26(b)(5), it is not incumbent on the Government to guess which log entries Plaintiffs object to. And the Government does not know. Hearing Tr. 45:24-46:5. Nor is it incumbent on the Government to prophylactically defend each of the entries on its privilege logs because Plaintiffs *might* object to them. Finally, putting the burden on the Government to figure out what log entries Plaintiffs challenge will only continue the Whac-a-Mole discovery that will only grow more frustrating as the rounds of briefing pile up.

The Government also objected to Plaintiffs' supplemental memorandum because it raised new exemplars of allegedly deficient log entries that Plaintiffs had never conferred with the Government about before filing their supplemental memorandum. *See* ECF No. 80 at 6-7; RCFC 37(a)(1). Before the hearing, the Government had addressed each of the alleged defects in these new exemplars as well. It appears beyond dispute that the Court's intervention could have been avoided as to these already resolved log entries and (presumably) many more objections. To prevent this discovery-by-Whac-a-Mole from continuing, the Court will not entertain further discovery motions until the Parties have conferred on any objections to specific items (*e.g.*, log entries) and reached an impasse.

If they reach an actual impasse, the Parties shall file a *joint* status report of no more than four pages, signed by *each* counsel of record, that identifies the issues in dispute and explains in detail the Parties' efforts to resolve these disputes. Such efforts shall consist primarily of real time communications, either in person or by video or teleconference. Letters and emails may be necessary, but they will not be sufficient. In the joint status report, each *side* shall have no more than two pages, double-spaced, to briefly explain its position. Upon receipt of such a joint status report, the Court will schedule a conference at which it will address the need for further briefing. And the Court may resolve the dispute in the conference without further briefing.

### III. The Government may assert the deliberative process privilege in *Penn Central* cases.

Plaintiffs next argue that the deliberative process privilege does not apply to this case at all and the Court should order the Government to turn over any documents it is withholding based on that privilege alone. The deliberative process privilege is a type of executive privilege that protects the internal deliberations of the executive branch to ensure that its consideration of issues is not hindered by the fear of negative publicity. *See Sierra Club*, 141 S. Ct. at 785.

According to Plaintiffs, the privilege is not applicable here because the Government's intent is purportedly central to their taking claim under the character of the governmental action

4

prong of *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). ECF No. 75 at 35-39. In *Penn Central*, the Supreme Court set forth the factors for courts to evaluate when determining whether a regulatory prohibition of certain uses of property constitutes a taking of that property compensable under the Fifth Amendment. Among these factors is the character of the Government's action—*i.e.*, an evaluation of the purpose behind the Government's action. *See Penn Central*, 438 U.S. at 123-25. The resolution of this issue requires the Court to determine whether the D.C. Circuit's *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422 (D.C. Cir. 1998) or the Federal Circuit's *Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed. Cir. 1985) provides the proper framework.

      Plaintiffs rely heavily on *In re Subpoena* to argue that the Government may not assert the privilege when its intent is central to Plaintiffs' claim. Plaintiffs contend that *Penn Central* requires the Court to analyze the "character" of the Government's action. ECF No. 75 at 38; *see also Rose Acre Farms, Inc. v. United States*, 559 F.3d 1260, 1267 (Fed. Cir. 2009) (citing *Penn Cent.*, 438 U.S. 104). According to Plaintiffs, the character prong requires the Court to assess "the purpose and reasoning behind" the Government's action. ECF No. 75 at 36. And because they contend that "purpose" and "intent" are interchangeable under the law, Plaintiffs argue the Government's intent is central to their claim. *Id.* at 37 n.16. In short, Plaintiffs want discovery into the internal deliberations of the U.S. Environmental Protection Agency (the "EPA" or "Agency") leading up to the "unprecedented"[4] revocation of Plaintiffs' permit. *See id.* at 38; ECF No. 81 at 15. The Government rejects Plaintiffs' argument and asserts that the traditional standards of *Zenith Radio* govern Plaintiffs' ability to overcome the privilege. ECF No. 80 at 34-35. The Government notes that the Federal Circuit has not adopted *In re Subpoena*, *id.* at 32; Plaintiffs characterize *Zenith Radio* as "inapplicable." ECF No. 81 at 16.

      The broad sweep of Plaintiffs' argument is easily dispensed with. First, the D.C. Circuit itself limited the scope of *In re Subpoena* to cases "in which the cause of action is directed at the agency's *subjective motivation*." *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 156 F3d 1279, 1280 (D.C. Cir. 1998) (emphasis added) (on petition for rehearing). But Plaintiffs are not arguing that the Government's subjective intent is relevant, much less central to, their claims. Hearing Tr. at 118:12-22 (explaining that Plaintiffs are not seeking the subjective intent of the Government through their discovery requests).

      Second, as the Government recognizes, the Federal Circuit has held that "a party seeking information 'must make a strong showing of need' to breach executive privilege . . . ." ECF No. 80 at 40 (quoting *In re United States*, 678 F. App'x 981, 989 (Fed. Cir. 2017) (quoting *Zenith Radio*, 764 F.2d at 1580)). *In re United States* involved the assertion of the deliberative process privilege in a *Penn Central* case. *See In re United States*, 678 F. App'x at 985-86. Given the Federal Circuit's invocation of *Zenith Radio* as controlling in a *Penn Central* case, the notion that *Zenith Radio* is "inapplicable" to any *Penn Central* claim is without merit.

---

[4] The Government contends that its regulatory action here was not unprecedented and it has revoked these same permits in the past. *See* Hearing Tr. 146:7-11 (alleging that the EPA has revoked the same type of license at least twice before this case). That issue is for another day.

True, *In re United States* is not a precedential opinion and not binding on this Court. But the Circuit could not have been any clearer. *In re United States* deals with the trial court's granting a motion to compel the production of documents over the Government's assertion of deliberative process privilege in a *Penn Central* case. While the Circuit agreed with most of the trial court's decision, the Circuit found the privilege to clearly apply to certain documents. *See In re United States*, 678 F. App'x at 988-92. In fact, the Circuit found the privilege's application under traditional principles, including *Zenith Radio*, to be so clear that it granted a writ of mandamus to prevent the disclosure of these privileged documents. *Id*. Given that a writ of mandamus is only issued when there is a clear legal duty to apply the privilege, the Circuit made abundantly clear that this Court is to address vitiating the deliberative process privilege in *Penn Central* cases under the traditional approach of *Zenith Radio*.

While the Parties dispute whether Plaintiffs have established the strong need for documents and whether that need outweighs the harm to the Government from disclosure, they have done so only in the aggregate. The Court cannot resolve this dispute at this point without knowing the *specific documents* Plaintiffs assert should be produced and the Government's objections to producing the specific documents. *See In re United States*, 678 F. App'x at 987 (illustrating the analysis is on a document-by-document basis). Because the Government will be amending its assertions of the privilege, any challenge is better made once the amended declarations are produced and the Parties have conferred. This decision does not foreclose Plaintiffs from seeking to compel production of *specific documents* under *Zenith Radio*.

## IV. The Government's assertions of deliberative process privilege fail to meet procedural requirements.

The final issue for consideration is whether the Government complied with the procedural and substantive requirements to invoke the deliberative process privilege. Because the Government failed to meet certain procedural requirements when asserting the privilege, the Government will need to provide revised declarations that comply with the procedural requirements addressed below. *See Dairyland Power Co-op. v. United States*, 77 Fed. Cl. 330, 340 (2007) ("[P]rocedural shortcomings . . . are not sufficient to invalidate the Government's claim of privilege."). Therefore, the Court does not reach the question of whether the Government's assertions of the privilege comply with substantive requirements.

### A. Deliberative Process Privilege

"[D]esigned to promote frank and candid deliberations among executive agencies[,]" *First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312, 320 (2000) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975)), the deliberative process privilege "protect[s] agencies from being forced to operate in a fishbowl[.]" *Sierra Club*, 141 S. Ct. 785 (internal quotation marks omitted) (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)).[5] "The privilege is rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news[.]'" *Id.* (quoting *Dep't of*

---

[5] Although the Supreme Court issued *Sierra Club* after the hearing on Plaintiffs' motion, the Parties submitted supplemental briefing on its application to their arguments.

*Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)); *see also Kaiser Aluminum & Chem. Corp. v. United States*, 141 Ct. Cl. 38, 49 (1958).

As a type of executive privilege, the deliberative process privilege shields "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sierra Club*, 141 S. Ct. at 785 (internal quotation marks omitted) (quoting *Sears*, 421 U.S. at 150). In other words, the privilege "protects from disclosure documents generated during an agency's deliberations about a policy, as opposed to documents that embody or explain a policy that the agency adopts." *Id.* at 783. However, documents containing investigative information or facts without revealing the Government's decision-making processes are discoverable and not protected under the deliberative process privilege. *Confidential Informant 59-05071 v. United States*, 108 Fed. Cl. 121, 131 (2012) (collecting cases). "Like all evidentiary privileges that derogate a court's inherent power to compel the production of relevant evidence, the deliberative process privilege is narrowly construed." *Pac. Gas & Elec. Co. v. United States ("Pac. Gas I")*, 70 Fed. Cl. 128, 133, *modified on reconsideration*, 71 Fed. Cl. 205 (2006) (quoting *Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D. Wash. 2000)). Establishing the deliberative process privilege requires the following steps.

*a)  Procedural Requirements*

The Government has the burden to prove that the deliberative process privilege applies to any withheld or redacted documents and must satisfy three procedural requirements. *See Confidential Informant 59-05071*, 108 Fed. Cl. at 131 (citing *Walsky Constr. Co. v. United States*, 20 Cl. Ct. 317, 320 (1990)). These requirements are:

> First, to invoke the privilege, the government must assert the privilege by declaration or affidavit. [*Walsky*, 20 Cl. Ct.] at 320 n.3. The privilege can be asserted by the head of the agency with control over the requested document, after personal consideration, or by one to whom such authority to invoke the deliberative process privilege on the agency's behalf has been delegated. *See Marriott Int'l Resorts L.P. v. United States* [], 437 F.3d 1302, 1308 (Fed. Cir. 2006) (holding that assertion of the privilege can be delegated); *cf. Walsky*, 20 Cl. Ct. at 320 (discussing process of assertion). Second, the officer invoking the privilege "must state with particularity what information is subject to the privilege." *Walsky*, 20 Cl. Ct. at 320; *see also* RCFC 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged . . . , the party must . . . describe the nature of the documents . . . not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim.")[.] Finally, "the agency must supply the court with precise and certain reasons for maintaining the confidentiality of the requested document." *Walsky*, 20 Cl. Ct. at 320 (internal quotation marks omitted).

*Confidential Informant 59-05071*, 108 Fed. Cl. at 131 (ellipses in original) (alterations in brackets).

                *b)*        *Substantive Requirements*

Additionally, the Government must meet two substantive requirements by demonstrating that the withheld documents are both (1) predecisional and (2) deliberative. *Confidential Informant 59-05071*, 108 Fed. Cl. at 131. "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Sierra Club*, 141 S. Ct. at 786; *see also Confidential Informant 59-05071*, 108 Fed. Cl. at 131-32.

                *c)*        *Balancing Test*

"To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure." *Sierra Club*, 141 S. Ct. at 785. But, as a qualified form of executive privilege, the deliberative process privilege may "be overcome upon a showing of evidentiary need weighed against the harm that may result from disclosure." *Confidential Informant 59-05071*, 108 Fed. Cl. at 132 (quoting *CACI Field Servs., Inc. v. United States*, 12 Cl. Ct. 680, 687 (1987)); *see also First Heights Bank*, 46 Fed. Cl. at 320 (noting that the deliberative process "privilege is not absolute"). If the Government meets the deliberative process privilege's procedural and substantive requirements, then the Court balances the Parties' competing interests and ascertains whether Plaintiffs have made "a strong showing of need in order to breach the privilege." *Zenith Radio*, 764 F.2d at 1580; *see also Confidential Informant 59-05071*, 108 Fed. Cl. at 132 ("After the government has shown that both the procedural and substantive requirements of the deliberative process privilege have been met, the court must balance the competing interests of the parties to determine whether the plaintiff has overcome the privilege by a showing of compelling need." (citing *Marriott*, 437 F.3d at 1307)). The balancing test is comprised of five factors, which are:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Dairyland Power*, 77 Fed. Cl. at 342 (quoting *In re Subpoena Served Upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992)).

### B. The EPA's Region III Administrator did not review a representative sample of documents to assert the privilege.

For this matter, EPA's former Region III Administrator, Mr. Cosmo Servidio, was the official asserting the privilege under a delegation of authority to do so. *See* ECF No. 75 at 19-25. The Parties agree that if there is a large group of documents potentially subject to the privilege, the Government official asserting the privilege may review a representative sample of documents

and assert the privilege based on those documents. Plaintiffs argue that there was an inadequate sampling here because: (1) this was not an "extreme case" with enough documents to justify using a representative sample; (2) nineteen documents do not make a sufficient representative sample; and (3) the EPA's Region III Administrator "appear[ed] to rely on a briefing from EPA personnel with direct involvement" in the litigation, ECF No. 75 at 24-25, and who categorized the documents for the delegate's review. ECF No. 81 at 11-12.

1. <u>A representative sample was appropriate for the universe of Region III documents claimed under the deliberative process privilege.</u>

Under the EPA's guidance for asserting the privilege, the delegate asserting privilege may review a "representative sample" of documents in "extreme cases" in which the "case[] involv[es] an extraordinarily large amount of material." ECF No. 75-5 at 7. Plaintiffs contend that this case is not extreme enough to justify the review of a representative sample. ECF No. 75 at 23; ECF No. 75-5 at 7. Because of the "broad and burdensome discovery requests," the Government contends that the Region III Administrator "appropriately relied upon a sample reflecting the several categories of deliberative, predecisional materials covered by the privilege . . . ." ECF No. 80 at 23; ECF No. 75-2 at 3-8 ¶¶ 2-12.

In *General Electric Co. v. Johnson*, No. CIV.A. 00-2855(JDB), 2007 WL 433095 (D.D.C. Feb. 5, 2007), the district court found the EPA's assertion of the deliberative process privilege was not precluded just because the Assistant Administrator "did not personally review every document . . . ." *Id.* at *7. *General Electric* dealt with the EPA claiming privilege over approximately 800 documents based on the delegate's review of 48 documents. *Id.* Other courts have also approved of the use of representative samples in cases involving fewer documents. *E.g., Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 609-11 (N.D. Cal. 2020) (representative sample appropriate to claim privilege over 121 documents); *United States v. Pechiney Plastics Packaging, Inc.*, No. 09-5692 (PGS), 2013 WL 1163514, at *19 (D.N.J. Mar. 19, 2013) (representative sample appropriate to claim privilege over 156 documents). Here, the Government is asserting privilege over roughly 4,000 documents. ECF 88-1 at 2-3 ¶ 4. Given the significant burden of reviewing and asserting privilege over 4,000 documents, the review of a representative sample is appropriate.

2. <u>The EPA's Region III Administrator's review of nineteen documents out of approximately four thousand was insufficient for evaluating deliberative process privilege claims with a representative sample.</u>

Just because the Government may rely on a representative sample to assert the privilege, it does not mean the chosen sample is sufficient. The EPA's review of 19 documents of the over 4,000 documents it is asserting privilege over is not a representative sample sufficient to support the assertion of privilege.

Neither party provided the Court with a method to determine what constitutes a sufficient representative sample for the deliberative process privilege. The Government argues its sample is sufficient, Hearing Tr. 97:4-100:18, while Plaintiffs argue that they would "not be offended" if the delegate reviewed between six and eight percent of the documents he or she is asserting

9

privilege over, *id*. at 76:14-78:12.  While there is no rule stating what constitutes a sufficient sample, cases provide useful guidance.  In *General Electric*, the district court found that an EPA Assistant Administrator reviewed a sufficient representative sample when he personally reviewed 48 out of over 800 documents he was asserting privilege over.  *Gen. Elec.*, 2007 WL 433095, at *7.  Similarly, another court approved of a delegate's review of 63 documents from 1,776 documents the Government was asserting privilege over.  *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991).  While the Court could survey many more decisions, it appears that courts generally accept a personal review of between 4%-6% of the documents by the agency delegate asserting privilege.  The Government did not cite to any case where less than ½ of one percent constituted a sufficient representative sample.

The Court need not resolve the specific number of documents the EPA Delegates must review to assert the privilege at this time.  Suffice it to say that the Government will need to base any assertion of privilege on a statistically meaningful sample.  *Gen. Elec. I*, 2006 WL 2616187, at *1 (requiring "defendants . . . to utilize a statistically-reliable method to generate a [representative] sample of approximately 100 documents"); *see also id*. at *3 (describing method used to generate sample).  The Court will convene a discovery conference in approximately two weeks in which it and the Parties will address this issue further before the review process begins.

> 3. <u>EPA personnel may categorize documents for the appropriate agency delegate.</u>

Plaintiffs also object to the fact that the Region III Administrator did not personally categorize the documents he reviewed, instead others created four broad categories and put each of the over 4,000 documents into one or more categories.  The Court does not see anything objectionable in the process that led to the categorization of documents into broad groups by subject matter, which was done to ensure that the delegate would review sample documents from each type (albeit the samples were too small).  As explained below, it appears that the EPA's categorization will aid ensuring that the proper EPA official reviews a representative sample of documents when asserting the privilege.  But to the extent the EPA delegates wish to assert privilege over categories of documents, the delegates will need to do so on their own and such groups will likely need to be more closely drawn to the documents in such categories.

While reviewing documents for responsiveness, attorney reviewers identified documents that they determined may be privileged.  For attorney-work product and attorney-client privilege, attorneys asserted the privilege.  For the deliberative process privilege, the attorney reviewers flagged documents that they thought may be privileged.  After the initial review, Ms. Stefania D. Shamet, an attorney with Region III, and attorneys with EPA's Office of General Counsel reviewed the documents potentially covered by the deliberative process privilege.  ECF No. 88-1 at 1, 5-7 ¶¶ 1, 11-12.  They then grouped the documents into four categories:

- Category 1—"includes draft documents and communications fully internal to the EPA, including Region III, the Office of Water, the Office of General Counsel, the Office of Enforcement and Compliance Assurance (OECA), and the Office of the Administrator.  It also includes some interagency communications between

10

EPA and the Office of the Assistant Secretary of the Army for Civil Works and the U.S. Army Corps of Engineers." ECF No. 88-1 at 7 ¶ 13.

- Category 2—"consists of handwritten notes of Agency staff reflecting considerations for policy development and potential future Agency decision points for policy actions, including consideration of action on proposals by Arch Coal and Mingo Logan Coal LLC." ECF No. 88-1 at 9 ¶ 15.
- Category 3—"includes drafts and communications among Agency staff and management regarding communications to certain external parties, including members of the public, stakeholders, representatives of the press, Members of Congress and their staff, and state government officials." ECF No. 88-1 at 9 ¶ 16.
- Category 4—"includes communications among Agency staff and management in connection with the process of publishing Pond, et al. 2008." ECF No. 88-1 at 9-10 ¶ 18.

In total, the EPA asserts the deliberative process privilege over "approximately 4,024" documents. ECF No. 88-1 at 4 ¶ 4. Categories 1 and 3 make up the overwhelming majority of the documents. Category 2 consists of 26 documents, ECF No. 80-1 at 87, and Category 4 consists of 11 documents, *id*. at 106. The remainder of documents are Categories 1 and 3, with most of these in Category 1. *See id*. at 15-85 (listing Category 1 documents) & 89-108 (listing Category 3 documents). Some documents are included in more than one category.

Insofar as the EPA's categories inform the collection of a representative sample, they are likely to add efficiency to the process. Based on these categories, it appears likely that a proper review would include all the Categories 2 and 4 documents because of the limited volume of documents. Handwritten notes (Category 2) are likely to require greater scrutiny and these 26 documents merit individual review. Similarly, given the apparently close relationship between Category 4 documents and the reason for the Government's action that is at the center of Plaintiffs' claim, individual review of those 11 documents is warranted as well. Given the volume of documents in Categories 1 and 3, the Government may review representative samples of each.

To be clear, the Court sees these categories as broad subject-matter groupings that will help ensure that the Agency reviews a proper sampling of documents from each group. These categories are likely not sufficiently narrow to allow the Agency delegates to assert privilege over them by referring only to these four groups. That is, if the delegates wish to group documents into categories for the assertion of privilege in their affidavits, those categories will need to be identified by the delegate and assert privilege over groups of related documents identified by Bates number. Here too, the Court and the Parties can address the specifics during the discovery conference to ensure that everyone is on the same page before the review begins.

### C. The EPA's Region III Administrator is not an appropriate delegate for documents never shared with Region III.

Plaintiffs argue that the then-Region III Administrator was not an appropriate agency delegate to assert the privilege over documents that the EPA's Headquarters office never shared

11

with Region III. ECF No. 75 at 22. To be clear, Plaintiffs do not challenge the Region III Administrator's ability to assert the privilege over documents originating outside Region III that other offices shared with Region III personnel. *See* Hearing Tr. 110:1-111:8. Thus, the universe of documents Plaintiffs object to the Region III Administrator asserting privilege over is limited. As of the hearing, the most precise estimate of the number of documents not shared with Region III over which the Region III Administrator is asserting privilege is "a very small universe of documents . . . ." Hearing Tr. 104:7.

Generally, deliberative process privilege claims are supported by an adequate declaration from the appropriate agency official or delegate who: (1) possesses "control over the requested information" and makes a "formal claim of privilege"; (2) asserts the privilege "based on actual personal consideration"; and (3) specifies with detail "the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege." *U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 222 F. Supp. 3d 38, 43 (D.D.C. 2016). An appropriate agency delegate may assert the deliberative process privilege on the EPA Administrator's behalf. *Marriott*, 437 F.3d at 1308 ("[T]his court concludes that the head of an [a]gency can, when carefully undertaken, delegate authority to invoke the deliberative process privilege on the [a]gency's behalf."). Plaintiffs insist that the Government failed to follow the Federal Circuit's precedent in *Marriott* and the EPA's guidance documents. ECF No. 75 at 22.

In *Marriott*, the Federal Circuit held that an agency head could properly delegate authority to invoke the deliberative process privilege to a "subordinate" who was "a high ranking [a]gency official with expertise in the nature of the privilege claim and documents at issue[,]" and "not directly responsible for or involved in [the same] substantive [] litigation[.]" *Marriott*, 437 F.3d at 1308; *cf. Landry v. FDIC*, 204 F.3d 1125, 1136 (D.C. Cir. 2000) (holding that the "head of the appropriate regional division . . . is of sufficient rank" to assert the deliberative process privilege). The dispute here hinges on whether the EPA's Region III Administrator can invoke the privilege over documents that were never shared with Region III personnel. Plaintiffs insist the Region III Administrator lacks "*expertise in the nature of the privilege claim and documents at issue.*" ECF No. 75 at 21-22 (emphasis added) (quoting *Marriott*, 437 F.3d at 1308); *see also* ECF No. 81 at 13. The Government disagrees because the Region III Administrator has the needed "expertise" because of the Region III Administrator's "substantial role" in the relevant regulatory process. ECF No. 80 at 26 (citing 40 C.F.R. §§ 231.4, 231.5).

This dispute is resolved by the EPA's delegation itself. The EPA's 1984 delegation, which Plaintiffs rely upon, addresses this very issue:

> In general, the head of the office responsible for developing the document or material in question should assert the privilege on EPA's behalf where appropriate. Thus, *if a litigant makes a discovery request at a regional office seeking production of matters which originated with a Headquarters program office, the decision to assert the privilege should probably be made by the head of that Headquarters program office.*

ECF No. 75-5 at 5-6 (emphasis added). The Government, however, points to the 2016 re-delegation that includes only the requirement that the agency delegate get the concurrence of the General Counsel before asserting the privilege. ECF No. 80-1 at 13. But the 2016 delegation

12

does not provide the "detailed criteria for invoking the privilege" that *Marriott* requires. *Marriott*, 437 F.3d at 1308. Nor does it purport to. Instead, it refers the agency personnel to the 1984 delegation for guidance on asserting the privilege. ECF No. 80-1 at 13. Given the 2016 delegation's invocation of the 1984 delegation for guidance on asserting the privilege, the 1984 delegation supplies the Agency's standards for asserting the privilege.

The Government's argument that the guidance does not speak in absolutes and, therefore, the Region III Administrator is the appropriate delegate to assert privilege over all documents ignores the fact that the delegation assumes that the appropriate official in the office that generated the documents is the one that will assert the privilege. It is not apparent this case is anything but a "general" case in which the head of the organization creating the document should assert the privilege. And there is nothing that limits the Government to producing only one affidavit asserting the privilege.

Furthermore, it is not clear from the record how many documents are at issue here. The Government contends that most documents that the Region III Administrator asserted the deliberative process privilege over either originated in Region III or were shared with Region III personnel. But there is "a very small universe of documents" that were never shared with anyone in Region III. Hearing Tr. 103:15-104:11. For this small universe of documents, the appropriate official in the office that generated them will need to assert the privilege over those documents. But because there is no clarity as to the number of documents that the EPA's Headquarters office never shared with Region III, it is not clear at this point whether a representative sample would be appropriate for this group of documents. In advance of the discovery conference, the Parties will need to identify these documents and be prepared to discuss whether the use of a representative sample is justified for these documents.

### V. CONCLUSION

For the foregoing reasons, the Court:

1. Denies in part Plaintiffs' motion to compel insofar as it seeks updated privilege logs without Plaintiffs first identifying what log entries they object to;

2. Denies in part Plaintiffs' motion to compel insofar as it seeks to preclude all assertions of the deliberative process privilege;

3. Grants in part Plaintiffs' motion to compel insofar as it seeks one or more compliant deliberative process declarations; and

4. Will schedule a discovery conference in two weeks to schedule the remaining discovery in this matter.

**IT IS SO ORDERED.**

s/ Edward H. Meyers<br>
Edward H. Meyers<br>
Judge