# In the United States Court of Federal Claims

No. 17-67 L

Filed: January 17, 2025

---

|  |  |
|---|---|
| UNITED AFFILIATES CORPORATION and MINGO LOGAN COAL LLC, | ) ) ) |
|  | ) |
| *Plaintiffs*, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| *Defendant*. | ) |
|  | ) |

---

## ORDER

Pending before the court is Plaintiffs' fourth motion to compel the production of documents that the Government withholds under the deliberative process privilege. ECF No. 149. Upon completing *in camera* review of the documents at issue, the court grants-in-part and denies-in-part Plaintiffs' motion.

## I.    Background[1]

This dispute arises out of Plaintiffs' rights associated with the Spruce No. 1 mine in West Virginia. *United Affiliates Corp. v. United States* (*United Affiliates I*), 143 Fed. Cl. 257, 261-62 (2019). Plaintiff United Affiliates Corp. owns land and mineral rights to coal, and Plaintiff Mingo Logan LLC holds a lease that would allow it to mine coal. *United Affiliates Corp. v. United States* (*United Affiliates IV*), 164 Fed. Cl. 391, 393 (2023). In 2007, Mingo Logan received a permit under Section 404 of the Clean Water Act from the United States Army Corps of Engineers ("Corps") to discharge fill material from the proposed mine into nearby streams. *United Affiliates IV*, 164 Fed. Cl. at 393. In 2009, the Environmental Protection Agency ("EPA") requested that the Corps suspend Mingo Logan's permit. *Mingo Logan Coal Co. Inc. v. U.S. EPA*, 70 F. Supp. 3d 151, 159 (D.D.C. 2014), *aff'd sub nom. Mingo Logan Coal Co. v. EPA*, 829 F.3d 710 (D.C. Cir. 2016). When the Corps did not suspend the permit, the EPA exercised

---

[1] Because the underlying facts of this dispute are presented at length in the court's prior decisions, *United Affiliates Corp. v. United States* (*United Affiliates I*), 143 Fed. Cl. 257, 261-62 (2019); *United Affiliates Corp. v. United States* (*United Affiliates II*), 147 Fed. Cl. 412, 415-17 (2020); *United Affiliates Corp. v. United States* (*United Affiliates III*), 154 Fed. Cl. 335, 339-40 (2021); *United Affiliates Corp. v. United States* (*United Affiliates IV*), 164 Fed. Cl. 391, 393-94 (2023), the court presents only the necessary background to the pending motion.

its authority under Section 404(c) of the Clean Water Act to withdraw[2] Mingo Logan's permit to discharge fill material into the Pigeonroost and Oldhouse Branch streams in 2011. *United Affiliates IV*, 164 Fed. Cl. at 393. Plaintiffs then brought this suit alleging the EPA's invocation of its Section 404(c) authority effectuated a regulatory taking under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).[3] *United Affiliates I*, 143 Fed. Cl. at 262, 266-67.

Plaintiffs' regulatory taking claim has survived a motion to dismiss, *United Affiliates I*, 143 Fed. Cl. at 267, but the Parties have bogged down in discovery disputes. The discovery disputes began with Plaintiffs' motion to compel the production of documents outside the administrative record and a privilege log, which the court granted in part. *United Affiliates Corp. v. United States* (*United Affiliates II*), 147 Fed. Cl. 412, 420-21 (2020). Next, Plaintiffs moved to compel the production of documents over which the Government claimed various privileges, including the deliberative process privilege. *United Affiliates Corp. v. United States* (*United Affiliates III*), 154 Fed. Cl. 335, 340 (2021). Plaintiffs had previously sought the same relief but filed a new motion to compel because the Government had resolved their dispute regarding all the documents that were specifically identified in Plaintiffs' briefing. *Id.* at 339-40. In addressing Plaintiffs' second motion, the court rejected Plaintiffs' argument that the Government could not assert the deliberative process privilege in a regulatory taking case and instructed Plaintiffs to make document-by-document arguments to support their motion to compel if they wished to renew it. *Id.* at 342-43. In their third motion to compel deliberative materials, Plaintiffs did not make document-specific requests, so the court denied that motion without prejudice. *United Affiliates IV*, 164 Fed. Cl. at 397. Now, Plaintiffs have filed their fourth motion to compel the production of documents withheld under the deliberative process privilege, ECF No. 149; ECF No. 150, in accordance with the court's instructions to make document-specific arguments.

## II. Legal Standard

The deliberative process privilege is a form of executive privilege that protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (internal quotation marks omitted) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). This privilege encourages candor in the agency decision-making process and prevents the chilling effect on agency officials and staff that would result if their deliberations were subject to disclosure. *Id.*; *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' by protecting open

---

[2] The court uses "withdraw" as a shorthand. As the Government has explained, the EPA amended the permit to prohibit the discharge into the two streams, but did not revoke the permit.

[3] The court dismissed Plaintiffs' categorical taking claim. *United Affiliates I*, 143 Fed. Cl. at 266. Only the regulatory taking claim remains.

and frank discussion among those who make them within the Government." (citations omitted) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 151)); *Kaiser Aluminum & Chem. Corp. v. United States*, 157 F. Supp. 939, 946 (Ct. Cl. 1958).

The deliberative process privilege is a qualified privilege that applies on a document-by-document basis. *See Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1307 (Fed. Cir. 2006) ("The qualified deliberative process privilege is subject to judicial oversight."); *Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1581 (Fed. Cir. 1985) ("Any government claim of privilege should be made with regard to specific documents and communications and specify the particular privilege claimed and the basis for its assertion."). For each document, courts decide whether the deliberative process privilege applies, and if so, whether the plaintiff's evidentiary need for disclosure of the document outweighs the harm to the government from disclosure.[4] *In re United States*, 678 F. App'x 981, 987 (Fed. Cir. 2017); *Dairyland Power Coop. v. United States*, 77 Fed. Cl. 330, 338 (2007); *Mississippi v. United States*, Nos. 19-231L, 19-258L, 19-1968L, 19-1812L, 20-30L, 21-820L, 2022 WL 17447722, at *2 (Fed. Cl. Dec. 6, 2022) ("Courts cannot override the deliberative process privilege in the aggregate; parties must challenge documents individually and explain why their need for each document outweighs the government's interest in maintaining its secrecy.").

First, for the privilege to apply, the Government must demonstrate the withheld documents are pre-decisional and deliberative. *Sierra Club*, 592 U.S. at 268. "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Id.* The privilege protects drafts in many instances. *Id.* at 269 (describing drafts as "subject to feedback and change"); *In re United States*, 321 F. App'x 953, 959 (Fed. Cir. 2009) ("[D]raft decisions, including factual material, should be protected by the deliberative process privilege."). Drafts receive strong protection because "[t]he public is only marginally concerned with reasons supporting a policy which an agency has rejected, or with reasons which might have supplied, but did not supply, the basis for policy which was actually adopted on a different ground." *Sears, Roebuck & Co.*, 421 U.S. at 152; *see also Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 192 (1975) ("It is not for us to require d[i]sclosure of documents, . . . which are not final opinions, which do not accurately set forth the reasons for the [Government's] decisions, and the disclosure of which would impinge on the [Government's] predecisional processes."). "In contrast, the public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted." *Sears, Roebuck & Co.*, 421 U.S. at 152.

Second, if the privilege applies, then the party seeking the privileged material must make a "strong showing of need in order to breach the privilege." *Zenith Radio Corp.*, 764 F.2d at 1580. To determine if the plaintiff's evidentiary need is sufficient to breach the privilege, the court considers five factors:

---

[4] Because the Parties do not argue the procedural requirements in the instant motion, the court does not address them.

> (i) the relevance of the evidence sought to be protected; (ii) the
> availability of other evidence; (iii) the 'seriousness' of the
> litigation and the issues involved; (iv) the role of the government
> in the litigation; and (v) the possibility of future timidity by
> government employees who will be forced to recognize that their
> secrets are violable.

*Dairyland Power Coop.*, 77 Fed. Cl. at 338 (quoting *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992)); *see Estes v. United States*, 128 Fed. Cl. 285, 293 (2016) (applying the *Dairyland* factors to conclude that the plaintiff's "evidentiary need for the documents is low" when "the withheld documents [were] not especially relevant to the legal bases for the Court's decision in this case, and the Court believes that other, non-privileged evidence is available to prove [the plaintiff]'s claims"); *Sikorsky Aircraft Corp. v. United States*, 106 Fed. Cl. 571, 579 (2012) (deciding the factors favored the Government when the first factor favored the plaintiff, but other evidence was available, and the fifth factor favored the Government).

Here, the third and fourth *Dairyland* factors apply equally to all the requested documents. *Dairyland Power Coop*, 77 Fed. Cl. at 342. The third factor is unhelpful to both Parties. This litigation is serious for the Government because the Government is "defending EPA's lawful regulatory authority to protect the environment, which has implications for other § 404(c) actions." ECF No. 155 at 39. Likewise, this litigation is serious for Plaintiffs because they seek "substantial" damages and seek to "vindicate their Fifth Amendment rights" with the possibility of "implications" beyond this case. ECF No. 150 at 34-36. Thus, this litigation is serious for both Parties, so the third *Dairyland* factor does not weigh in favor of either Party. *In re Upstream Addicks & Barker (Tex.) Flood-Control Reservoirs*, 152 Fed. Cl. 114, 124 (2021); *Sikorsky Aircraft Corp.*, 106 Fed. Cl. at 579. Under the fourth factor, the Government has a stake in this litigation, so the court must carefully scrutinize the privileged documents to "ensure that the privilege retains its proper narrow scope." *Dairyland Power Coop.*, 77 Fed. Cl. at 338. Accordingly, the fourth factor favors Plaintiffs. *In re Upstream Addicks & Barker*, 152 Fed. Cl. at 124. The court scrutinizes the Government's invocation of the privilege for each document and reviews the other three *Dairyland* factors to reach its privilege determinations below.[5]

## III.    Discussion

Plaintiffs move to compel production of ninety-four documents under Rule 37(a)(1) of the Rules of the United States Court of Federal Claims. ECF No. 150 at 3. As a preliminary matter, the Government has already produced three of the requested documents: US_SPRUCE2461821, US_SPRUCE2521439, and US_SPRUCE0745644. ECF No. 155 at 1

---

[5] The Parties also make global arguments regarding the other three *Dairyland* factors. *See* ECF No. 150 at 29-34; ECF No. 155 at 34-39. The court's privilege determinations depend on its document-specific review of the other three *Dairyland* factors, so unlike the third and fourth factors, the other factors cannot be summarily addressed for all the documents.

n.1, 20 n.13; ECF No. 156 at 4 n.2.  Thus, the court does not address those three documents.  The court turns to the remaining ninety-one documents.

Before turning to the Parties' document-specific arguments, the court considers the backdrop for Plaintiffs' arguments for disclosure.  Plaintiffs argue that they need each of the withheld documents to prove their regulatory taking claims under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).  ECF No. 150 at 14-18, 25-28.  *Penn Central* requires courts to determine whether a regulatory taking occurred by considering the circumstances of the case, with particular interest in three factors: (1) "the character of the governmental action," (2) "the extent to which the [governmental action] has interfered with distinct investment-backed expectations," and (3) "[t]he economic impact of the [governmental action] on the claimant."  *Penn Cent.*, 438 U.S. at 124.  Plaintiffs argue the requested documents are relevant to the first and second *Penn Central* factors.  ECF No. 150 at 15, 26-27.

For the first *Penn Central* factor, the "governmental action" is the EPA's invocation of its Section 404(c) authority to withdraw part of the Spruce mine permit, so Plaintiffs seek the withheld documents to "shine much-needed light on the character and nature" of the EPA's action.  *Id.* at 15.  Plaintiffs argue the "government's publicly stated purpose" based on the administrative record is insufficient to determine the character of the EPA's action.  *Id.* at 16.  Rather, Plaintiffs claim the court must "determine whether EPA acted to address genuine, unresolved environmental concerns," as the public record reflects, "or whether those concerns had already been addressed previously," so those concerns were merely a pretext for the "EPA's goal . . . to undo the prior administration's decision and serve a political end."  *Id.* at 17.  The Government contends the existing record is sufficient to judge the character of the EPA's invocation of its Section 404(c) authority, and Plaintiffs fail to demonstrate a strong evidentiary need for the requested documents.[6]  ECF No. 155 at 12.

And for the second *Penn Central* factor, Plaintiffs' investment-backed expectation is that "they would be permitted to engage in mining at" the Spruce mine without the EPA withdrawing the permit, and they argue this expectation was objectively reasonable because the EPA's action withdrawing part of the Spruce mine permit was "unprecedented."  ECF No. 150 at 26-27.  Plaintiffs claim the withheld documents will support that their expectation was objectively reasonable because the withheld documents will show whether the EPA thought "Plaintiffs had the right to engage in surface mining at Spruce, the action [the EPA] contemplated taking was unprecedented, and there actually was a new scientific understanding upon which to base its decision."  ECF No. 156 at 12.  The Government argues the reasonableness of Plaintiffs' investment-backed expectation does not depend on evidence of the government's non-public views, Plaintiffs do not need evidence of the Government's subjective views of Plaintiffs'

---

[6] The Government also contends Plaintiffs' argument is an impermissible collateral attack on the decision of the district court.  ECF No. 155 at 15, 17; *see also Mingo Logan*, 70 F. Supp. 3d at 183.  But the district court litigation was brought under the Administrative Procedure Act.  This case presents a Fifth Amendment claim that is distinct from the district court litigation and the discovery issues are different.  *See United Affiliates II*, 147 Fed. Cl. at 418-19.  The court, therefore, reviews Plaintiffs' evidentiary need for the withheld documents in this case.

investment-backed expectations, and Plaintiffs do not have a strong evidentiary need for the withheld documents.  ECF No. 155 at 28-29.

With this context, the court turns to the Parties' document-specific arguments.  In *United Affiliates IV*, the court noted "the Government [can] group like documents together and the declarations [can] apply to the categories of documents collectively, so long as the categories [are] sufficiently narrow to limit them to truly like documents."  164 Fed. Cl. at 396 n.4.  Since the court's prior decision, the Government categorized and subcategorized the withheld documents, and the Government's declarations argue against disclosure of the documents in each subcategory.[7]  ECF No. 155 at 9-10; ECF No. 155-11; ECF No. 155-12; ECF No. 155-13.  The Government has also provided the withheld documents to the court for *in camera* review.  ECF No. 165.

## A.    Subcategory 1.1.1

The documents in subcategory 1.1.1 reflect "deliberations among EPA staff and/or managers prior to initiation of the CWA Section 404(c) process" to withdraw the Spruce mine permit due to the "EPA's renewed concerns about the environmental impacts from the Spruce No. 1 Mine as authorized and formulation of policy recommendations as to whether and what action EPA should take in light of those concerns."  ECF No. 155-11 at ¶ 12; ECF No. 155-12 at ¶ 12.  Plaintiffs argue these documents are crucial because they relate to "when EPA officials at the highest levels made the initial decision to seek revocation of the Spruce permit."  *See* ECF No. 150 at 18.  The Government contends "[d]isclosure of these documents would chill EPA's staff's ability to debate policy recommendations regarding the substance and nature of potentially high-profile policy actions at an early stage of the process."  ECF No. 155-11 at ¶ 12; ECF No. 155-12 at ¶ 12.  Below, the court discusses the privilege determinations for thirty documents that fall into subcategory 1.1.1.[8]

### 1.    US_SPRUCE0755339-40

Plaintiffs seek production of a redacted portion of an email, US_SPRUCE0755339-40.  ECF No. 150 at 19; ECF No. 150-1 at 1.  The Government withheld the redacted material because it "reflects internal pre-decisional deliberations regarding how to proceed with respect to certain permits in litigation."  ECF No. 150-1 at 1; ECF No. 155-8 at 5.  Based on *in camera* review, the court agrees with the Government that the redacted text is pre-decisional and deliberative, so the privilege applies to the redacted material.

Turning to Plaintiffs' evidentiary need, Plaintiffs highlight that the date of this email—February 27, 2009—is the same date as a "phone conversation and follow-up email exchange . . . during which EPA personnel requested that the Corps suspend the Spruce permit."  ECF No. 150

---

[7] The Government does not dispute that the withheld documents are "generally relevant" to this action.  ECF No. 155 at 18.

[8] Some of these documents fall into other subcategories, too.  The court notes those documents and their other subcategories as applicable throughout this discussion.

at 19.  Because Plaintiffs' attempts to obtain further discovery into the events on February 27, 2009, have been unsuccessful, Plaintiffs argue the redaction on page US_SPRUCE0755339 is "necessary to determining what motivated EPA's request" that the Corps suspend the Spruce mine permit and "who made the decision."  *Id.*; ECF No. 156 at 14.  The Government argues Plaintiffs have no evidentiary need for the redacted portion of the email because other produced materials indicate the Fourth Circuit's decision two weeks prior in *Ohio Valley Environment Coal v. Aracoma Coal Co.*, 556 F.3d 177 (4th Cir. 2009), motivated the EPA's request to the Corps.  ECF No. 155 at 20.  Based on the court's *in camera* review, the withheld portion does not indicate who made the decision to contact the Corps or the rationale behind it, so the redaction does not provide the evidentiary support that Plaintiffs seek for their taking claim.  Thus, the *Dairyland* factors weigh in favor of the Government, so the court does not order production of US_SPRUCE0755339-40.

2.    US_SPRUCE2428008-09

Plaintiffs seek production of a March 3, 2009, EPA draft letter, US_SPRUCE2428008-09, to the Corps making a formal request to suspend the Spruce mine permit.  ECF No. 150 at 19.  The court's *in camera* review confirmed the letter reflects "internal, pre-decisional deliberations" about the EPA's request to the Corps regarding four mines, ECF No. 150-1 at 1; ECF No. 155-8 at 12.  So the privilege applies to the draft letter.

According to Plaintiffs, they have an evidentiary need for this document "to determin[e] what justification—scientific or otherwise—EPA had at the time it made the suspension request to the Corps in early 2009."  ECF No. 150 at 19.  The draft letter is relevant to the litigation, so the first *Dairyland* factor favors Plaintiffs.  Plaintiffs have the EPA's final letter, ECF No. 155-9, which details the "EPA's reasoning for requesting that the Corps suspend the permit," ECF No. 155 at 20, so the second factor—availability of other evidence—favors the Government.  The third factor does not favor either Party, and the fourth factor favors Plaintiffs.  *See supra* Part II.  Further, the Government's declarations state the Government risks harm from disclosure in the form of chilled staff policy debates at an early stage in the process, ECF No. 155-11 at¶ 12; ECF No. 155-12 at ¶ 12, so the fifth factor favors the Government.  Balancing the factors together, the factors slightly favor the Government, so Plaintiffs do not establish a sufficient need to overcome the Government's privilege.  Accordingly, the court does not order production of US_SPRUCE2428008-09.

3.    US_SPRUCE0703749, US_SPRUCE0699386-89, US_SPRUCE0760574-77, US_SPRUCE0760578-81, US_SPRUCE0722169-73, and US_SPRUCE0800514-18

Plaintiffs claim the next six documents—US_SPRUCE0703749, US_SPRUCE0699386-89, US_SPRUCE0760574-77, US_SPRUCE0760578-81, US_SPRUCE0722169-73, and US_SPRUCE0800514-18—are "relevant to determining the extent to which non-governmental groups influenced EPA's decision and why EPA ultimately chose to move forward only with respect to Spruce."  ECF No. 150 at 19.  To support their argument, Plaintiffs claim these documents relate to a March 2009 email from a member of an environmental group to EPA

Office of Water Chief of Staff Gregory Peck about the impact of thirteen coal permits in which the environmental group requests that Mr. Peck "[m]aintain the status quo until" scientific reports are ready. ECF No. 150-14. The Government highlights that the email cited by Plaintiffs, *id.*, postdates the EPA's suspension request to the Corps on February 27, 2009. ECF No. 155 at 20. Therefore, it is inconceivable that the email influenced the EPA's decision. Additionally, the Government already produced communications between environmental groups and the EPA, so the Government argues that Plaintiffs do not need privileged internal communications. *Id.*

### a) US_SPRUCE0703749

The Government's privilege log describes US_SPRUCE0703749 as an email "identifying permits for potential consideration and reflecting internal pre-decisional deliberations."[9] ECF No. 155-8 at 2; *see also* ECF No. 150-1 at 1. The court's *in camera* review confirmed the email is consistent with the privilege log description and falls within the scope of the privilege. Further, the court's *in camera* review confirmed the withheld email does not indicate environmental groups influenced the EPA or illuminate why the EPA decided to proceed under Section 404(c) for the Spruce mine permit, so this document is not relevant to the case as Plaintiffs posit. Thus, the first *Dairyland* factor favors the Government. The second *Dairyland* factor also weighs in favor of the Government because other evidence is available to Plaintiffs— notably the March 2009 email to Mr. Peck, ECF No. 150-14, and other communications between environmental groups and the EPA, ECF No. 155 at 20. The third factor does not favor either Party, and the fourth factor favors Plaintiffs. *See supra* Part II. Finally, the fifth *Dairyland* factor favors the Government because it risks harm from disclosure in the form of chilled staff policy debates at an early stage in the process, ECF No. 155-11 at¶ 12; ECF No. 155-12 at ¶ 12. Thus, the *Dairyland* factors weigh in favor of the Government, so the court does not order production of US_SPRUCE0703749.

### b) US_SPRUCE0699386-89 and US_SPRUCE0760574-77

US_SPRUCE0699386-89 and US_SPRUCE0760574-77 contain redactions in an email thread between Bob Sussman, then-EPA Senior Policy Counsel, and Mr. Peck. ECF No. 150-1 at 1-2; ECF No. 155-8 at 2, 5, 14, 17. US_SPRUCE0760574-77 includes a later email in the same email thread as US_SPRUCE0699386-89 and the redactions in both documents are identical. Therefore, the court considers them together. *In camera* review confirmed the redactions contain "internal pre-decisional deliberations," ECF No. 150-1 at 1-2; ECF No. 155-8 at 2, 5, within the ambit of the privilege. Like the document discussed *supra* Section III.A.3.a, the court's *in camera* review confirmed the withheld email does not indicate environmental groups influenced the EPA or illuminate why the EPA decided to proceed under Section 404(c)

---

[9] The Government previously produced the email attachment, US_SPRUCE0703751-52, to Plaintiffs. Therefore, the court addresses only the redacted portion of the email. Cover Letter Regarding Deliberative Documents for In Camera Review (Oct. 3, 2024).

for the Spruce mine permit, so the *Dairyland* factors weigh in favor of the Government. Thus, the court does not order production of US_SPRUCE0699386-89 and US_SPRUCE0760574-77.

*c)*    *US_SPRUCE0760578-81 and US_SPRUCE0722169-73*

US_SPRUCE0760578-81 and US_SPRUCE0722169-73 also contain redactions in a single email thread. ECF No. 150-1 at 2; ECF No. 155-8 at 2, 5, 14, 17. The court's *in camera* review of US_SPRUCE0760578-81 confirmed its redactions contain "internal pre-decisional deliberations regarding EPA position as to several mine discharges, including Spruce No. 1," ECF No. 150-1 at 2; ECF No. 155-8 at 5, so the privilege applies. Further, three of the four redactions to US_SPRUCE0722169-73 are identical to the redactions to US_SPRUCE0760578-81. The privilege also applies to the additional redaction on pages US_SPRUCE0722169-70 that reflects "internal pre-decisional deliberations [about] permits for WV, KY, and VA," ECF No. 150-1 at 2; ECF No. 155-8 at 2.

Turning to Plaintiffs' evidentiary need, the court's *in camera* review confirmed the redactions do not discuss environmental groups' involvement, but they do shed light on the reason for the EPA's interest in the Spruce mine permit. Thus, the redactions are relevant to the litigation, so the first *Dairyland* factor favors Plaintiffs. Regardless, other available evidence is consistent with the redactions in these documents; for example, the EPA's letter to the Corps, ECF No. 155-9, provides that the reason the EPA requested suspension of the Spruce mine permit was due to "new information," including the Pond study. Because the redacted material does not provide unique information from other available evidence, the second factor favors the Government. The third factor does not favor either Party, and the fourth factor favors Plaintiffs. *See supra* Part II. The Government's declarations state the Government risks harm from disclosure in the form of chilled staff policy debates at an early stage in the process, ECF No. 155-11 at¶ 12; ECF No. 155-12 at ¶ 12, so the fifth factor favors the Government. Balancing the *Dairyland* factors together, they favor the Government and upholding the privilege. Thus, the court does not order production of US_SPRUCE0760578-81 and US_SPRUCE0722169-73.

*d)*    *US_SPRUCE0800514-18*

The Government withheld US_SPRUCE0800514-18 because it contains "internal pre-decisional deliberations regarding formulation of information [about] Spruce permitting." ECF No. 150-1 at 2; ECF No. 155-8 at 6. The court's *in camera* review confirmed this withheld document largely does not discuss the Spruce mine permit at all, but it contains other pre-decisional deliberations that fall within the ambit of the privilege. Further, these documents do not provide evidence of environmental group involvement nor explain why the EPA sought to withdraw the Spruce mine permit, so the *Dairyland* factors weigh in favor of the Government similar to the documents discussed *supra* Sections III.A.3.a and III.A.3.b. Accordingly, the court does not order production of US_SPRUCE0800514-18.

4.    US_SPRUCE0758190-91, US_SPRUCE0802610, US_SPRUCE0802612-
14, US_SPRUCE0796302-05, and US_SPRUCE0759610-11

9

Plaintiffs seek five documents—US_SPRUCE0758190-91, US_SPRUCE0802610, US_SPRUCE0802612-14, US_SPRUCE0796302-05, and US_SPRUCE0759610-11—to "determin[e] EPA's purpose and assess[] the nature of its decision making" during the early stages of the process to withdraw the Spruce mine permit in March and April 2009. ECF No. 150 at 18-20. In response, the Government contends the privilege logs indicate that the EPA's motivation for discussing the Spruce mine in March and April 2009 was "contemporaneous developments in *litigation* challenging the Spruce permit." ECF No. 155 at 21 (emphasis in original).

### a)      US_SPRUCE0758190-91

One of the documents contains an email thread titled "Discussion with Bob," US_SPRUCE0758190-91. ECF No. 150 at 19; ECF No. 150-1 at 1; ECF No. 155-8 at 5, 17. The Government describes its contents as internal deliberations about "formulation of strategy in Spruce litigation." ECF No. 150-1 at 1; ECF No. 155-8 at 5.[10] Consistent with the Government's privilege log, the court's *in camera* review confirmed the document focuses primarily on litigation strategy, and the document does not reveal any information about the Spruce mine permit to support Plaintiffs' taking claim. Accordingly, this document is not relevant to the case as Plaintiffs posit, so the first *Dairyland* factor favors the Government. The second *Dairyland* factor does not weigh heavily in the consideration of this document as it discusses litigation strategy, so an absence of other available evidence similar to this document is consistent with the attorney-client and attorney work product privileges. The third factor does not favor either Party, and the fourth factor favors Plaintiffs. *See supra* Part II. Finally, the fifth *Dairyland* factor favors the Government because disclosure could produce agency staff timidity, ECF No. 155-11 at¶ 12; ECF No. 155-12 at ¶ 12. Thus, the *Dairyland* factors weigh in favor of the Government, so the court does not order production of US_SPRUCE0758190-91.

### b)      US_SPRUCE0802610, US_SPRUCE0802612-14, and US_SPRUCE0796302-05

Three of the documents Plaintiffs seek are "two drafts of a briefing document laying out EPA's potential 'next steps' related to the Spruce mine," US_SPRUCE0802612-14 and US_SPRUCE0796302-05, ECF No. 150 at 20; ECF No. 150-1 at 2-3; ECF No. 155-8 at 6-7, and a transmitting email, US_SPRUCE0802610, for one of the draft letters. ECF No. 150-1 at 2; ECF No. 155-8 at 6. As the Government states, the draft letters discuss the EPA's possible next steps for the permits based on the results of the contemporaneous litigation. *See* ECF No. 155 at 21. The court's *in camera* review confirmed the draft letters are materially the same; US_SPRUCE0802612-14 does not discuss the Spruce mine permit and contains "internal pre-decisional deliberations regarding formulation of next steps" related to other permits in litigation, and US_SPRUCE0796302-05 contains the same information from US_SPRUCE0802612-14

---

[10] Because the Government does not assert attorney-client privilege or the attorney work product doctrine to withhold this document, the court considers only its protection under the deliberative process privilege.

with some additional deliberative material about the Spruce mine permit. *See id.*; ECF No. 155-8 at 6-7. The transmitting email, US_SPRUCE0802610, summarizes recommendations from the attached draft letter. *See* ECF No. 150 at 20; ECF No. 150-1 at 2-3; ECF No. 155-8 at 6-7. As drafts and an email discussing a draft, the privilege covers these three documents.

Plaintiffs seek these three documents to determine "the extent to which EPA's decision" to proceed with the withdrawal process for the Spruce mine permit "was in fact based on new information." *See* ECF No. 150 at 29. These documents do not reveal any information about the EPA's decision to withdraw the Spruce mine permit; rather they discuss mostly other permits and litigation strategy for the Spruce mine permit. Thus, these documents do not provide the evidence that Plaintiffs seek. Similar to the documents discussed *supra* Section III.A.4.a, the *Dairyland* factors weigh in favor of the Government, so the court does not order production of US_SPRUCE0802610, US_SPRUCE0802612-14, and US_SPRUCE0796302-05.

c)    *US_SPRUCE0759610-11*

US_SPRUCE0759610-11 contains "internal agency deliberations regarding formulation" of the next steps for several permits. ECF No. 150-1 at 3; ECF No. 155-8 at 5. As the privilege log indicates, the court's *in camera* review confirmed this document contains deliberations over the next steps to merit the protection of the privilege. ECF No. 150-1 at 3; ECF No. 155-8 at 5. Plaintiffs seek this document to reveal a discussion about the "path forward" for the Spruce mine permit. ECF No. 150 at 20 (cleaned up). The court's *in camera* review confirmed this document does not provide insight into the EPA's purpose or decision-making specifically with respect to the Spruce mine permit, so Plaintiffs do not establish a sufficient need for the document to overcome the Government's privilege. Thus, like the documents discussed *supra* Sections III.A.4.a and III.A.4.b, the *Dairyland* factors weigh in favor of the Government, and the court does not order production of US_SPRUCE0759610-11.

5.    US_SPRUCE0809333-34, US_SPRUCE0743953-54,<br>US_SPRUCE0805235-36, US_SPRUCE0804770-72, US_SPRUCE0837195-97,<br>US_SPRUCE0835198-200, US_SPRUCE0836946-48, and<br>US_SPRUCE0836949-52

Eight documents that Plaintiffs seek are emails "involving key EPA and CEQ personnel" that discuss the EPA's options related to the Spruce mine permit. ECF No. 150 at 20-21. According to Plaintiffs, these emails are relevant to determine the reasons for the "EPA's decision . . . to initiate the CWA Section 404(c) process with respect to . . . the Spruce No. 1 mine." *Id.* (omission in original). The Government argues that these documents "do not speak to EPA's reasons for initiating the § 404(c) process," but rather concern "the status of the litigation in the permit challenge and reflect[] internal, pre-decisional deliberations." ECF No. 155 at 21. The Government must produce these eight documents, but it may redact them as provided below.[11]

---

[11] US_SPRUCE0809333-34, US_SPRUCE0804770-72, US_SPRUCE0837195-97, US_SPRUCE0835198-200, US_SPRUCE0836946-48, and US_SPRUCE0836949-52 also fall

11

### a)    *US_SPRUCE0809333-34 and US_SPRUCE0743953-54*

US_SPRUCE0809333-34 and US_SPRUCE0743953-54 come from a single email thread.  US_SPRUCE0809333-34 is an email from Mr. Peck that includes internal deliberations in the first paragraph, *see* ECF No. 150-1 at 3; ECF No. 155-8 at 7, which fall within the ambit of the privilege.  The rest of Mr. Peck's email, however, recounts the history of the Spruce mine and its permit process.  The deliberative process privilege protects facts within withheld documents "'if the manner of selecting or presenting those facts would reveal' the deliberative process of the agency, or 'if the facts are inextricably intertwined with the policy-making process.'"  *In re Upstream Addicks & Barker*, 152 Fed. Cl. at 122 (quoting *Jowett, Inc. v. Dep't of Navy*, 729 F. Supp. 871, 877 (D.D.C. 1989)); *see EPA v. Mink*, 410 U.S. 73, 87-88 (1973), *superseded by statute on other grounds*, Pub. L. No. 93-502, 88 Stat. 1561 (1974), *as recognized in CIA v. Sims*, 471 U.S. 159 (1985) ("[M]emoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would be generally available for discovery by private parties in litigation with the Government."); *Sikorsky Aircraft Corp.*, 106 Fed. Cl. at 579; *see also In re United States*, 321 F. App'x at 959 ("[F]actual information that itself reveals the deliberative process and cannot be severed from the deliberative context is protected." (citation omitted)).  Yet, the Government must produce "purely factual material appearing . . . in a form that is severable without compromising the private remainder of the documents."  *Mink*, 410 U.S. at 91.  Here, the facts in Mr. Peck's email are severable from the first paragraph containing internal pre-decisional deliberations, so the privilege does not apply to those severable facts.  Thus, the Government must produce US_SPRUCE0809333-34 to Plaintiffs, but it may redact the first paragraph of Mr. Peck's email on page US_SPRUCE0809333.

Relatedly, the redacted material in US_SPRUCE0743953-54 is identical to the redaction of Mr. Peck's email in US_SPRUCE0809333-34.  For the same reasons as stated for US_SPRUCE0809333-34, the Government must produce Mr. Peck's email in US_SPRUCE0743953-54, but it may redact the first paragraph of Mr. Peck's email on page US_SPRUCE0743953.

### b)    *US_SPRUCE0805235-36*

Another email from Mr. Peck, US_SPRUCE0805235-36, is similar to his email in US_SPRUCE0809333-34.  The first two paragraphs of and last paragraph of US_SPRUCE0805235-36 contain internal deliberations covered by the privilege, but the rest of the email recounts largely the same historical information found in US_SPRUCE0809333-34.  As a result, the deliberative process privilege does not protect most of Mr. Peck's email, which

---

under subcategory 1.9.  ECF No. 150-23 at 5.  Given that Plaintiffs argue for disclosure of these six documents alongside US_SPRUCE0743953-54 and US_SPRUCE0805235-36, ECF No. 150 at 20-21, and that US_SPRUCE0743953-54 and US_SPRUCE0805235-36 only fall under subcategory 1.1.1, ECF No. 150-23 at 5, the court analyzes these eight documents together under subcategory 1.1.1.

contains severable facts. Accordingly, the Government must produce US_SPRUCE0805235-36, but it may redact the first two paragraphs on page US_SPRUCE0805235 and the last paragraph before the signature of Mr. Peck's email on US_SPRUCE0805236.

c) <em>US_SPRUCE0804770-72 and US_SPRUCE0837195-97</em>

The email chain from US_SPRUCE0805235-36 continues in US_SPRUCE0804770-72, in which Mr. Sussman replies to Mr. Peck's email with internal deliberations on "the status of the litigation in the permit challenge." ECF No. 150-1 at 3; ECF No. 155-8 at 7. The court's *in camera* review revealed that US_SPRUCE0837195-97 is a duplicate of US_SPRUCE0804770-72. While the privilege protects Mr. Sussman's reply, it does not extend to all of Mr. Peck's initial email contained in US_SPRUCE0804770-72 and US_SPRUCE0837195-97, as Mr. Peck's email is the same email discussed *supra* Section III.A.5.b. Accordingly, the Government must produce US_SPRUCE0804770-72 and US_SPRUCE0837195-97, but it may redact pages US_SPRUCE0804770 and US_SPRUCE0837195 in full, and redact the last paragraph of Mr. Peck's email on pages US_SPRUCE0804771 and US_SPRUCE0837196.

d) <em>US_SPRUCE0835198-200, US_SPRUCE0836946-48, and US_SPRUCE0836949-52</em>

Mr. Peck's email discussed *supra* Section III.A.5.b also appears in three more documents. In US_SPRUCE0835198-200, Mr. Sussman forwards Mr. Peck's email to then-EPA Administrator Lisa Jackson and copies two other individuals who were then at the EPA, Diane Thompson and Arvin Ganesan. ECF No. 150-1 at 4; ECF No. 155-8 at 8, 20, 32. Mr. Sussman's email contains internal deliberations on "the status of the litigation in the permit challenge." ECF No. 150-1 at 4; ECF No. 155-8 at 7. US_SPRUCE0836946-48 contains US_SPRUCE0835198-200 in full and continues the email thread with subsequent emails that are further internal deliberations between Ms. Thompson and Mr. Sussman. ECF No. 150-1 at 4; ECF No. 155-8 at 8. Likewise, US_SPRUCE0836949-52 contains US_SPRUCE0836946-48 in full and continues the email thread with subsequent emails containing further internal deliberations between Ms. Thompson and Mr. Sussman. ECF No. 150-1 at 4-5; ECF No. 155-8 at 8. The deliberative process privilege protects Mr. Sussman's emails and Ms. Thompson's emails in US_SPRUCE0835198-200, US_SPRUCE0836946-48, and US_SPRUCE0836949-52, but it does not extend to Mr. Peck's initial email, as discussed *supra* Section III.A.5.b. Accordingly, the Government must produce US_SPRUCE0835198-200, US_SPRUCE0836946-48, and US_SPRUCE0836949-52, but it may redact the following: pages US_SPRUCE0836946 and US_SPRUCE0836949-50 in full; the portions of pages US_SPRUCE0835198, US_SPRUCE0836947, and US_SPRUCE0836951 containing Mr. Sussman's email and the first two paragraphs of Mr. Peck's email; and the portions of pages US_SPRUCE0835199, US_SPRUCE0836948, and US_SPRUCE0836952 containing the last paragraph of Mr. Peck's email.

6. <u>US_SPRUCE0766119 and US_SPRUCE0766227</u>

Plaintiffs seek production of an email exchange, US_SPRUCE0766119 and US_SPRUCE0766227, titled "Spruce Goose" that discusses the EPA's "strategy surrounding Spruce No. 1 mine permitting process." ECF No. 150 at 21; ECF No. 150-1 at 5; ECF No. 155-8 at 5. US_SPRUCE0766227 contains internal pre-decisional deliberations, and US_SPRUCE0766119 contains US_SPRUCE0766227 in full and continues the email chain with an additional deliberative email. The court's *in camera* review confirmed the emails fall within the ambit of the privilege.

According to Plaintiffs, they need these emails to determine the nature of the EPA's "strategy and decision making" with respect to the "EPA's decision . . . to initiate the CWA Section 404(c) process" to withdraw the Spruce mine permit. ECF No. 150 at 21 (omission in original). These documents are relevant to the present litigation as they discuss the EPA's strategy with respect to the Spruce mine permit, so the first *Dairyland* factor favors Plaintiffs. Yet, other available evidence reveals strategy discussions within the EPA about the Spruce mine permit. *E.g.*, ECF No. 155-19 (discussing meetings between the EPA, the Corps, and the Council on Environmental Quality ("CEQ")). These withheld documents do not provide unique evidence to support Plaintiffs' claim in light of the other available evidence, so the second factor favors the Government. The third factor does not favor either Party, and the fourth factor favors Plaintiffs. *See supra* Part II. Finally, the fifth factor favors the Government because the Government's declarations state the Government risks harm from disclosure in the form of chilled staff policy debates at an early stage in the process, ECF No. 155-11 at ¶ 12; ECF No. 155-12 at ¶ 12. On balance, the *Dairyland* factors favor the Government, so the court does not order production of US_SPRUCE0766119 and US_SPRUCE0766227.

7.    US_SPRUCE0837550, US_SPRUCE0859794, US_SPRUCE0837200-01, US_SPRUCE2116814-15, US_SPRUCE0745642, US_SPRUCE0761787, and US_SPRUCE0743985-86

Plaintiffs seek production of seven documents that they claim are relevant to "determining what options EPA considered, how the highest level political officials at EPA developed the agency's decision with respect to Spruce, and the role that the White House and CEQ played in the process." ECF No. 150 at 21. The Government argues nothing indicates these documents reveal an "alleged ulterior motive behind EPA's action[s]." *See* ECF No. 155 at 22.

a)    US_SPRUCE0837550, US_SPRUCE0859794, US_SPRUCE0837200-01, and US_SPRUCE2116814-15

US_SPRUCE0837550, US_SPRUCE0859794, US_SPRUCE0837200-01, and US_SPRUCE2116814-15 all come from a single email thread. The first email, US_SPRUCE0837550, from Mr. Sussman "contains internal, pre-decisional deliberations regarding Spruce Mine permit and DOJ involvement." ECF No. 150-1 at 6; ECF No. 155-8 at 9, 21. US_SPRUCE0859794 contains US_SPRUCE0837550 in full and continues the email thread with "internal pre-decisional deliberations concerning development of a decision related to" the Spruce mine permit. ECF No. 150-1 at 6; ECF No. 155-8 at 10. Likewise,

US_SPRUCE0837200-01 contains US_SPRUCE0859794 in full and continues the email thread with "internal deliberation and legal advice" among the EPA "regarding potential policy decisions . . . about Spruce 1 Mine and formulation of potential options to proceed with permitting process." ECF No. 150-1 at 6; ECF No. 155-8 at 9.  Further, US_SPRUCE2116814-15 contains US_SPRUCE0837200-01 in full, and the redactions in US_SPRUCE2116814-15 are identical to the withheld emails from US_SPRUCE0837200-01.[12]  Based on the court's *in camera* review, the deliberations in the email thread in these four documents fall under the deliberative process privilege as recommendations prepared by lower-level staff sent to higher-level agency officials for approval.  *See Sierra Club*, 592 U.S. at 271; *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 899 (D.C. Cir. 2015) ("A recommendation to a supervisor on a matter pending before the supervisor is a classic example of a deliberative document.").

Based on the court's *in camera* review, these documents are relevant to the present litigation; however, these documents, consistent with the Government's statement, do not indicate the EPA had an ulterior motive as Plaintiffs allege.  ECF No. 155 at 22.  Thus, the first *Dairyland* factor weighs slightly in favor of Plaintiffs.  The other available evidence reveals the EPA discussed the Spruce mine permit during the contemporaneous pending litigation, ECF No. 155-17, so the second *Dairyland* factor favors the Government.  The third factor does not favor either Party, and the fourth factor favors Plaintiffs.  *See supra* Part II.  Finally, the fifth factor favors the Government because the Government's declarations state the Government risks harm from disclosure in the form of chilled staff policy debates at an early stage in the process, ECF No. 155-11 at¶ 12; ECF No. 155-12 at ¶ 12.  On balance, Plaintiffs do not establish a sufficient need to overcome the Government's privilege because the minimal relevance of these documents pales in comparison to the Government's risk of harm from disclosure.  As such, the court does not order production of US_SPRUCE0837550, US_SPRUCE0859794, US_SPRUCE0837200-01, and US_SPRUCE2116814-15.

   *b) US_SPRUCE0745642, US_SPRUCE0761787, and US_SPRUCE0743985-86*

Three of the documents Plaintiffs seek come from one email thread.  The initial email, US_SPRUCE0745642, from Mr. Sussman contains "inter-agency pre-decisional deliberations regarding how to proceed with Corps and DOJ regarding pending litigation on Spruce 404 permit." ECF No. 150-1 at 6; ECF No. 155-8 at 4, 16.  US_SPRUCE0761787 continues the email thread from US_SPRUCE0745642, and the redacted text is identical to the email in US_SPRUCE0745642.[13]  US_SPRUCE0743985-86 contains US_SPRUCE0761787 in full, and

---

[12] US_SPRUCE2116814-15 also falls under subcategory 1.9.  ECF No. 150-23 at 6.  Given that the redactions in US_SPRUCE2116814-15 are identical to the emails in US_SPRUCE0837200-01, and that US_SPRUCE0837200-01 only falls under subcategory 1.1.1, the court analyzes this document in tandem with US_SPRUCE0837200-01.

[13] US_SPRUCE0761787 also falls under subcategory 1.9.  ECF No. 150-23 at 6.  Given that the redactions in US_SPRUCE0761787 are identical to US_SPRUCE0745642, and that

the redacted text on page US_SPRUCE0743985 is the same email from US_SPRUCE0761787. Thus, the withheld material in these three documents is the same, and the court's *in camera* review confirmed the privilege applies to that withheld material.

Similar to the documents discussed *supra* Section III.A.7.a, the withheld email is consistent with the Government's statement that these documents do not shed light on an ulterior motive for the EPA's actions.  ECF No. 155 at 22.  Thus, the court likewise does not order production of US_SPRUCE0745642, US_SPRUCE0761787, and US_SPRUCE0743985-86.

### B.    Subcategory 1.1.2

Thirteen documents Plaintiffs seek immediately precede the EPA's request that the Corps suspend the Spruce mine permit on September 3, 2009.  ECF No. 150 at 22.  These documents fall into subcategory 1.1.2, which covers drafts and internal agency communications about "draft language for inclusion in a letter to the Corps of Engineers from EPA prior to initiation of the CWA Section 404(c) process identifying concerns in light of new information regarding environmental impacts from the Spruce No. 1 Mine and requesting that the Corps take action regarding those concerns."[14]  ECF No. 155-11 at ¶ 13; ECF No. 155-12 at ¶ 13.  According to Plaintiffs, "[t]hese documents are relevant to assessing the nature and character of EPA's decision making," such as whether the EPA changed its position with respect to the Spruce mine permit and "whether EPA sought to frame its request in such a way to accentuate purported new information and/or minimize the risk of incurring takings liability."  ECF No. 150 at 22.

The Government reiterates that the EPA did not change its position when it issued its Final Determination withdrawing part of the Spruce mine permit, and, regardless, these documents do not contain the evidence Plaintiffs seek.  ECF No. 155 at 23-24.  Further, disclosure of these documents would harm the EPA by chilling agency staff deliberations about inter-agency deliberations, chilling internal draft review and circulation, interfering with agency staff deliberations about the "content and nature of external high-profile policy actions," and causing confusion by revealing "interim views of Agency staff that could be interpreted inaccurately as reflecting the expressed position of the Agency."  ECF No. 155-11 at ¶ 13; ECF No. 155-12 at ¶ 13.

### 1.    US_SPRUCE0768402

The redaction from US_SPRUCE0768402, an email from Mr. Peck, consists of pre-decisional discussions about a draft of a letter, ECF No. 150-1 at 9; ECF No. 155-8 at 6, 18, so the privilege applies.  The court's *in camera* review confirmed the redacted material does not provide any insight into the EPA's decision-making to support Plaintiffs' claim, so this document does not provide the relevant evidence that Plaintiffs seek.  Accordingly, the first

---

US_SPRUCE0745642 only falls under subcategory 1.1.1, the court analyzes this document in tandem with US_SPRUCE0745642.

[14] Some of these documents fall into other subcategories, too.  The court notes those documents and their other subcategories as applicable throughout this discussion.

*Dairyland* factor weighs in favor of the Government.  The unredacted portion of the document reveals the email discusses a summary and an environmental impact statement ("EIS"), so the substance of this discussion is available to Plaintiffs.  Plaintiffs do not need the deliberative discussions when the unredacted portions are available, so the second *Dairyland* factor favors the Government.  The third factor does not favor either Party, and the fourth factor favors Plaintiffs.  *See supra* Part II.  Lastly, the Government risks agency staff timidity because disclosure of the deliberations in this document would chill internal draft review and circulation, ECF No. 155-11 at ¶ 13; ECF No. 155-12 at ¶ 13, so the fifth *Dairyland* factor favors the Government.  In sum, the *Dairyland* factors weigh in favor of the Government, so Plaintiffs do not establish a sufficient need to overcome the Government's privilege.  Accordingly, the court does not order production of US_SPRUCE0768402.

### 2.    US_SPRUCE0761041 and US_SPRUCE0742775-76

The Government produced US_SPRUCE0761041 with a single phrase redacted.  The redacted phrase "reflects internal pre-decisional deliberations," ECF No. 150-1 at 8; ECF No. 155-8 at 5, that fall within the ambit of the privilege.  The single redaction on page US_SPRUCE0742775 is identical to the redaction in US_SPRUCE0761041.  The court's *in camera* review confirmed the redactions in both US_SPRUCE0742775-76 and US_SPRUCE0761041 do not provide evidence to support Plaintiffs' takings claim, so the first *Dairyland* factor weighs in favor the Government.  The second factor also favors the Government because the unredacted text reveals discussion of meetings about the Spruce mine permit litigation and the development of a letter to the Corps, so in light of the unredacted, available text, Plaintiffs do not need the single withheld deliberative phrase.  The third factor does not favor either Party, and the fourth factor favors Plaintiffs.  *See supra* Part II.  Finally, the fifth factor favors the Government because disclosure of the single phrase risks harm to the Government's agency staff deliberations about potential agency actions.  ECF No. 155-11 at ¶ 13; ECF No. 155-12 at ¶ 13.  Accordingly, the *Dairyland* factors together favor the Government, so Plaintiffs do not establish a sufficient need to overcome the Government's privilege.  Thus, the court does not order production of US_SPRUCE0761041 and US_SPRUCE0742775-76.

### 3.    US_SPRUCE0802364, US_SPRUCE0742705, and US_SPRUCE0760990-91

The Government produced redacted versions of three documents—US_SPRUCE0802364, US_SPRUCE0742705, and US_SPRUCE0760990-91—from a single email thread.  The initial email, US_SPRUCE0802364, contains "internal pre-decisional deliberations concerning formulation of a draft Spruce letter . . . and issues other than the Spruce No. 1 mine,"[15] ECF No. 150-1 at 9; ECF No. 155-8 at 6.  US_SPRUCE0742705 contains

---

[15] US_SPRUCE0802364 also falls under subcategories 1.1.1 and 1.9.  ECF No. 150-23 at 6.  Given US_SPRUCE0742705 contains US_SPRUCE0802364 in full, and US_SPRUCE0742705

US_SPRUCE0802364 in full and continues the email thread with a redacted reply email that contains further deliberations.  US_SPRUCE0760990-91 contains US_SPRUCE0742705 in full and continues the email thread with a reply email that contains additional deliberations.[16]  As these documents contain deliberations about a draft document, they fall under the privilege.

With respect to Plaintiffs' need for the redacted material, the redacted material discussing a draft letter is relevant to the litigation.  Thus, the first *Dairyland* factor favors Plaintiffs.  On the other hand, Plaintiffs have the final letter sent to the Corps, ECF No. 155-9, so the availability of other evidence favors the Government.  The third factor does not favor either Party, and the fourth factor favors Plaintiffs.  *See supra* Part II.  Finally, the fifth factor favors the Government because disclosure of these documents would harm the EPA by chilling agency staff deliberations and by causing confusion by revealing "interim views of Agency staff that could be interpreted inaccurately as reflecting the expressed position of the Agency."  ECF No. 155-11 at ¶ 13; ECF No. 155-12 at ¶ 13.  Taken together, the factors favor the Government and upholding the privilege.  Thus, the court does not order production of US_SPRUCE0802364, US_SPRUCE0742705, and US_SPRUCE0760990-91.

### 4.    US_SPRUCE0762320-22 and US_SPRUCE0744658-60

Two documents sought by Plaintiffs, US_SPRUCE0762320-22 and US_SPRUCE0744658-60, come from one email thread.  The emails in US_SPRUCE0762320-22 "contain internal agency pre-decisional policy discussions regarding Spruce permitting process and how to proceed" with a letter to the Corps.  ECF No. 150-1 at 9; ECF No. 155-8 at 5.  The court's *in camera* review revealed that US_SPRUCE0744658-60 contains US_SPRUCE0762320-22 in full and continues the email thread with one additional email containing further deliberations.  All the emails in these two documents fall within the ambit of the privilege as discussions of a draft letter.  Like the documents discussed *supra* Section III.B.3, these documents are relevant to the present litigation, but the availability of the EPA's letter, ECF No. 155-9, and the potential harm to the Government outweigh Plaintiffs' need for these documents.  Accordingly, the court likewise does not order production of US_SPRUCE0762320-22 and US_SPRUCE0744658-60.

### 5.    US_SPRUCE2716615, US_SPRUCE2716616-18, and US_SPRUCE1740305-07

Plaintiffs seek three related documents: the transmitting email for a draft of a letter from the EPA to the Corps, US_SPRUCE2716615; the accompanying draft letter,

---

only falls under subcategory 1.1.2, the court analyzes US_SPRUCE0802364 in tandem with US_SPRUCE0742705.

[16] US_SPRUCE0760990-91 falls under subcategory 1.1.1.  ECF No. 150-23 at 6.  Given US_SPRUCE0760990-91 contains the same email thread as US_SPRUCE0742705, and US_SPRUCE0742705 only falls under subcategory 1.1.2, the court analyzes US_SPRUCE0760990-91 in tandem with US_SPRUCE0742705.

US_SPRUCE2716616-18; and a duplicate copy of the draft letter, US_SPRUCE1740305-07. The redacted portion of the transmitting email, US_SPRUCE2716615, contains deliberations about the draft letter's contents that qualify for the privilege. The draft letter copies, US_SPRUCE2716616-18 and US_SPRUCE1740305-07, are pre-decisional drafts that fall directly under the protection of the privilege. Like the documents discussed *supra* Sections III.B.3 and III.B.4, these documents are relevant to the present litigation, but the availability of the EPA's letter, ECF No. 155-9, and the potential harm to the Government outweigh Plaintiffs' need for these documents. As a result, the court does not order production of US_SPRUCE2716615, US_SPRUCE2716616-18, and US_SPRUCE1740305-07.

6.    US_SPRUCE0801506 and US_SPRUCE0801508-14

Plaintiffs next seek another draft letter and an email transmitting the draft with some deliberations about its content. The redactions from the transmitting email, US_SPRUCE0801506, reflect "internal pre-decisional deliberations concerning formulation of" the letter. ECF No. 155-8 at 6. These documents also fall under the privilege as drafting materials. Also like the documents discussed *supra* Sections III.B.3, III.B.4, and III.B.5, these documents are relevant to the present litigation, but the availability of the EPA's final letter, ECF No. 155-9, and the potential harm to the Government outweigh Plaintiffs' need for these documents. Thus, the court does not order production of US_SPRUCE0801506 and US_SPRUCE0801508-14.

C.    Subcategory 1.1.3

Plaintiffs seek three documents that predate the EPA's October 2009 statement that it would, for the first time since the Clean Water Act's enactment in 1972 (according to Plaintiffs), use its "404(c) authority to review a previously permitted project." ECF No. 150-21 at 2. As such, Plaintiffs contend these documents are "relevant to assessing EPA's state of mind with respect to that important statement, and whether EPA—and by extension, Plaintiffs—had any reason to doubt the veracity of this statement at the time." ECF No. 150 at 29. These three documents fall in subcategory 1.1.3, which contains internal EPA communications, briefing materials, and draft briefing materials about "whether to initiate the CWA Section 404(c) process for discharges from the Spruce No. 1 Mine." ECF No. 155-11 at ¶ 14; ECF No. 155-12 at ¶ 14. The Government counters that Plaintiffs do not need the redacted content from these emails, and that the content will not support Plaintiffs' "pretext" theory. ECF No. 155 at 24-25. Further, disclosure of these documents would harm the EPA by chilling inter-agency deliberations, chilling staff policy recommendation debates, hampering "the efficient day-to-day workings of EPA," interfering with preparation of agency staff drafts assessing a range of options, and ultimately hurting agency decision-making candor. ECF No. 155-11 at ¶ 14; ECF No. 155-12 at ¶ 14.

1.    US_SPRUCE0735529-30

The Government produced a redacted version of US_SPRUCE0735529-30. The redactions reflect "internal pre-decisional deliberations concerning next steps with regards to COE decision related to Spruce," ECF No. 150-1 at 10; ECF No. 155-8 at 3, which the court's *in camera* review confirmed fall under the protection of the privilege. The court's *in camera*

19

review confirmed the redactions also do not provide evidence to "doubt the veracity" of the EPA's October 2009 statement; rather, the redactions discuss the letter from the Corps and do not discuss the EPA's Section 404(c) authority.  Thus, the first *Dairyland* factor favors the Government as this document does not provide the relevant evidence that Plaintiffs seek.  Given that Plaintiffs have the letter from the Corps,[17] other evidence is available; therefore, the second factor also favors the Government.  The third factor does not favor either Party, and the fourth factor favors Plaintiffs.  *See supra* Part II.  Finally, the fifth factor—risk of agency staff timidity—favors the Government because disclosure of the redactions risks chilling inter-agency deliberations and chilling agency assessment of a range of options.  ECF No. 155-11 at ¶ 14; ECF No. 155-12 at ¶ 14.  Thus, the *Dairyland* factors weigh in favor of the Government, so Plaintiffs do not establish a sufficient need to overcome the Government's privilege.  Accordingly, the court does not order production of US_SPRUCE0735529-30.

2.    US_SPRUCE0835214

The Government's redactions to US_SPRUCE0835214 contain "internal pre-decisional deliberations regarding what steps EPA should take."  ECF No. 150-1 at 10; ECF No. 155-8 at 8.  Because the redactions frankly discuss potential options available to the agency, they fall within the core of the privilege.

Turning to Plaintiffs' need for the redacted material, the redactions are relevant to the litigation, so the first *Dairyland* factor favors Plaintiffs.  The other available evidence indicates what option the EPA ultimately chose—it chose to proceed under its Section 404(c) authority—and the reasons for its decision.  *See* ECF No. 155-14.  Thus, the second *Dairyland* factor favors the Government.  The third factor does not favor either Party, and the fourth factor favors Plaintiffs.  *See supra* Part II.  Finally, the Government argues disclosure of this document would harm the EPA by interfering with the agency's consideration of a range of options.  ECF No. 155-11 at ¶ 14; ECF No. 155-12 at ¶ 14.  On balance, the factors favor the Government and upholding the privilege.  Accordingly, the court does not order production of US_SPRUCE0835214.

3.    US_SPRUCE0835222

Like the above two documents, the Government produced a redacted version of US_SPRUCE0835222.  The redactions reflect "internal, pre-decisional deliberations regarding what steps EPA should take," ECF No. 150-1 at 10; ECF No. 155-8 at 8, which fall under the privilege.  Similar to the document discussed *supra* Section III.C.2, the redactions are relevant to this litigation, but other available evidence indicates the EPA's concerns with the Spruce mine permit led it to invoke its Section 404(c) authority after the Corps refused to suspend the permit, *see* ECF No. 155-14, and the disclosure of these redactions would harm the EPA's deliberations.  Accordingly, the *Dairyland* factors weigh in favor of the Government, so the court does not order production of US_SPRUCE0835222.

---

[17] The Government previously produced the letter from the Corps, US_SPRUCE0735532-35, to Plaintiffs.  Cover Letter Regarding Deliberative Documents for In Camera Review (Oct. 3, 2024).

### D.     Subcategory 1.1.4

Plaintiffs seek production of two documents, US_SPRUCE0837553 and US_SPRUCE2116817, that fall into subcategory 1.1.4, which contains internal EPA communications about "policy recommendations regarding how EPA should proceed immediately following initiation of the CWA Section 404(c) process for discharges from the Spruce No. 1 Mine." ECF No. 155-11 at ¶ 16; ECF No. 155-12 at ¶ 15. The redacted content from US_SPRUCE0837553 contains "internal, pre-decisional deliberations regarding Spruce Mine permit status." ECF No. 150-1 at 10; ECF No. 155-8 at 9. US_SPRUCE2116817 is materially the same as US_SPRUCE0837553. The withheld content in these two documents falls under the privilege.

Turning to the *Dairyland* analysis, Plaintiffs seek these documents to reveal "whether EPA acknowledged the unfair and unprecedented nature of its decision" or "EPA viewed this as an ongoing regulatory matter that was merely adapting to accommodate further developments in EPA's scientific understanding." ECF No. 150 at 23; *see also id.* at 29 (explaining Plaintiffs seek US_SPRUCE2116817 "to determine[e] precisely how EPA grappled with its earlier . . . views with respect to the Spruce mine"). These documents are relevant to the litigation as Plaintiffs posit; however, the court's *in camera* review confirmed that these documents are consistent with the Government's position that the "EPA had long-held environmental concerns regarding the Spruce No. 1 Mine" and that the EPA did not reverse an earlier decision. ECF No. 155 at 25. Other available evidence indicates the EPA had long-held environmental concerns, *see Mingo Logan*, 70 F. Supp. 3d at 158-59 (reviewing the EPA's comments on the Corps' EIS that raise concerns about the Spruce mine permit), and these documents do not provide unique support for Plaintiffs' claims. The third factor does not favor either Party, and the fourth factor favors Plaintiffs. *See supra* Part II. Further, the Government contends disclosure of these documents would "chill EPA's staff's ability to debate policy recommendations regarding the substance and nature of potentially high-profile policy actions," result in "less rigorously considered policy actions," and "interfere with staff's ability to discuss a range of options, ideas, or analyses that may not ultimately be selected for Agency action." ECF No. 155-11 at ¶ 16; ECF No. 155-12 at ¶ 15. Based on the *Dairyland* factors, the Government's harm from disclosure outweighs Plaintiffs' evidentiary need. Thus, the court does not order production of US_SPRUCE2116817 and US_SPRUCE0837553.

### E.     Subcategory 1.7

Plaintiffs seek two documents, US_SPRUCE0837287-88 and US_SPRUCE0835195, that fall into subcategory 1.7, which covers internal EPA communications about its policy in inter-agency deliberations with the Corps "regarding how and whether the Corps would respond to the issuance of the Proposed Determination."[18] ECF No. 155-11 at ¶ 31; ECF No. 155-12 at ¶ 29. Plaintiffs seek these documents for their relevance in "assessing how EPA conducted the

---

[18] US_SPRUCE0835195 also falls into subcategory 1.9. ECF No. 150-23 at 7. Since Plaintiffs requested US_SPRUCE0835195 in tandem with US_SPRUCE0837287-88, ECF No. 150 at 24, the court analyzes US_SPRUCE0835195 under subcategory 1.7, which it shares with US_SPRUCE0837287-88.

§ 404(c) process and the nature and character of its decision making." ECF No. 150 at 24. The Government argues Plaintiffs do not have a strong evidentiary need for these documents. ECF No. 155 at 26. Further, disclosure of these documents would chill and interfere with inter-agency deliberations. ECF No. 155-11 at ¶ 31; ECF No. 155-12 at ¶ 29.

### 1. US_SPRUCE0837287-88

The Government produced a redacted version of US_SPRUCE0837287-88. The redactions contain "internal pre-decisional deliberations related to Spruce Mine Proposed Determination," ECF No. 150-1 at 13; ECF No. 155-8 at 9, which fall under the privilege. Based on the court's *in camera* review, the redactions are consistent with the Government's declarations that this document as part of subcategory 1.7 discusses the response from the Corps to the Proposed Determination, and the redactions pertain largely to the timing of communications rather than the evidence Plaintiffs seek about the EPA's "nature and character of its decision making," ECF No. 150 at 24. Thus, the redacted material is minimally relevant to the litigation, so the first *Dairyland* factor weighs slightly in favor of Plaintiffs. Regardless, Plaintiffs have the Proposed Determination, ECF No. 150-18, so the second *Dairyland* factor on the availability of other evidence favors the Government. The third factor does not favor either Party, and the fourth factor favors Plaintiffs. *See supra* Part II. Finally, the fifth factor favors the Government because disclosing the discussions in these emails would interfere with inter-agency deliberations. ECF No. 155-11 at ¶ 31; ECF No. 155-12 at ¶ 29. On balance, the *Dairyland* factors slightly favor the Government, so Plaintiffs do not establish a sufficient need to overcome the Government's privilege. Accordingly, the court does not order production of US_SPRUCE0837287-88.

### 2. US_SPRUCE0835195

The Government also produced US_SPRUCE0835195, which is an email with all the email body's text redacted. The Government's privilege log indicates the redacted emails discuss "what actions [the Corps] would be willing to take regarding ongoing litigation and the Spruce permit." ECF No. 155-8 at 8; *see also* ECF No. 150-1 at 13. The court's *in camera* review confirmed the redacted text falls under the privilege as deliberative and pre-decisional.

Turning to Plaintiffs' evidentiary need, the court's *in camera* review confirmed the withheld text largely pertains to the options considered by the Corps. While this text is arguably relevant to Plaintiffs' claim, it does not provide insight into the EPA's decision-making process as much as it provides insight into the decision-making process of the Corps. Accordingly, Plaintiffs do not establish a sufficient need for the withheld text, so they cannot overcome the Government's privilege. Thus, the *Dairyland* factors weigh in favor of the Government, so the court does not order production of US_SPRUCE0835195.

### F. Subcategory 1.8

Plaintiffs seek seven documents falling into subcategory 1.8.[19]  ECF No. 150-23 at 6-7. The documents in subcategory 1.8 relate to "communications with Arch Coal regarding Spruce Mine No. 1."  ECF No. 155-11 at ¶ 32; ECF No. 155-12 at ¶ 30.

       1.    <u>US_SPRUCE0859788, US_SPRUCE0743931, and US_SPRUCE0859789</u>

Plaintiffs seek three internal documents that "contain EPA's 'strategy for next steps in [the] Spruce permitting process' in light of a conversation with Sen. Rockefeller of West Virginia."[20]  ECF No. 150 at 24; *see* ECF No. 150-1 at 12-13; ECF No. 155-8 at 4.  These documents, Plaintiffs say, are "relevant to determining the impact of various political considerations on EPA's political appointees' decision making."  ECF No. 150 at 24.  The Government argues the unredacted portions of the documents reveal that they discuss the EPA contacting Steve Leer, then-president of Arch Coal, and Plaintiffs can seek Mr. Leer's testimony about any EPA contacts without requiring the Government to produce the redacted text.  ECF No. 155 at 26.

The Government's privilege log describes the redactions to contain pre-decisional deliberations on "future Spruce Mine court action."  ECF No. 155-8 at 10; *see also* ECF No. 150-1 at 12-13.  Based on the court's *in camera* review, the redacted email from Ms. Jackson's Richard Windsor alias is the same in all three documents, and her email contains pre-decisional deliberations within the purview of the privilege.  In US_SPRUCE0859788, Shawn Garvin, then-EPA Region 3 regional administrator, replies, and his reply also falls under the privilege.  Mr. Sussman's reply is the same in both US_SPRUCE0743931 and US_SPRUCE0859789, with the bcc-line as the only difference between the two documents.  Mr. Sussman's reply also falls under the privilege.

Based on the court's *in camera* review, these documents do not indicate the politicians influenced the EPA's decision-making.  Rather, consistent with the Government's position, these documents contain the EPA's discussions about the politicians' recommended communication strategy with Mr. Leer.  Thus, the first *Dairyland* factor weighs in favor of the Government because these documents are not relevant to the central claim of this case.  Plaintiffs can seek Mr. Leer's testimony to determine what communications, if any, resulted after the EPA's discussions with the politicians, so the availability of other evidence also favors the Government.  The third factor does not favor either Party, and the fourth factor favors Plaintiffs.  *See supra* Part II.  Further, the risk of agency staff timidity favors the Government because disclosure of these documents risks harming the Government's ability to "evaluate settlement proposals and prepare counter-proposals."  ECF No. 155-11 at ¶¶ 33-34; ECF No. 155-12 at ¶¶ 33-34.

---

[19] Some of these documents fall into other subcategories, too.  The court notes those documents and their other subcategories as applicable throughout this discussion.

[20] US_SPRUCE0859788 and US_SPRUCE0859789 also fall under subcategory 3.10.  ECF No. 150-23 at 7.  Given Plaintiffs argue for disclosure of these two documents alongside US_SPRUCE0743931, ECF No. 150 at 24, and US_SPRUCE0743931 only falls under subcategory 1.8, ECF No. 150-23 at 7, the court analyzes these three documents together under subcategory 1.8.

Accordingly, the *Dairyland* factors weigh in favor of the Government, so the court does not order production of US_SPRUCE0859788, US_SPRUCE0743931, and US_SPRUCE0859789.

2.    US_SPRUCE0859828-29, US_SPRUCE0834810-14, and
US_SPRUCE0859705-10

Plaintiffs seek production of three documents relating to "an October 30, 2009 meeting between EPA and representatives of Mingo Logan during which EPA laid out its concerns and the potential outcomes of the § 404(c) process." ECF No. 150 at 23. According to Plaintiffs, these documents are relevant to determining whether the EPA's public statements to Mingo Logan matched the "approach EPA actually took with respect to § 404(c) action" and the administrative record. *Id.* The Government suggests these documents are not vital to Plaintiffs' claims. ECF No. 155 at 26.

a)    US_SPRUCE0859828-29

The Government produced a redacted version of US_SPRUCE0859828-29. The redacted portion of this document on page US_SPRUCE0859828 consists of "pre-decisional policy considerations regarding Spruce 404(c) action," ECF No. 150-1 at 10; ECF No. 155-8 at 10, and falls within the purview of the privilege. The court's *in camera* review confirmed the redacted portion does not create an inconsistency with what the EPA told Mingo Logan or put in the administrative record, as Plaintiffs suggest, ECF No. 150 at 23. Thus, the document does not provide the evidence Plaintiffs seek, so the first *Dairyland* factor weighs in favor of the Government. Additionally, the redactions are not inconsistent with the other available evidence to Plaintiffs, so the second factor favors the Government. The third factor does not favor either Party, and the fourth factor favors Plaintiffs. *See supra* Part II. Finally, the fifth factor favors the Government because disclosure risks harming agency deliberations on technical and policy evaluations of ongoing litigation. ECF No. 155-11 at ¶ 34; ECF No. 155-12 at ¶ 32. Based on the *Dairyland* factors, Plaintiffs' evidentiary need for the redacted material does not overcome the Government's privilege. Accordingly, the court does not order production of US_SPRUCE0859828-29.

b)    *US_SPRUCE0834810-14 and US_SPRUCE0859705-10*

Two of the documents, US_SPRUCE0834810-14 and US_SPRUCE0859705-10, come from a single email thread. The first redaction in US_SPRUCE0834810-14 on page US_SPRUCE0834810 "discusses and characterizes a meeting between representatives of EPA and Arch Coal and reflects internal, pre-decisional deliberations regarding resolution of EPA's concerns related to the Spruce No. 1 mine." ECF No. 150-1 at 10-11; ECF No. 155-8 at 8. Like the document discussed *supra* Section III.F.2.a, Plaintiffs have no evidentiary need to overcome the Government's privilege to determine what was discussed during this meeting, in particular because Plaintiffs' representatives attended this meeting. The remaining redactions in this document on pages US_SPRUCE0834811-14 are internal deliberations on an unrelated matter, ECF No. 150-1 at 10-11; ECF No. 155-8 at 8, so those redactions are not relevant to this litigation. The court confirmed this in its *in camera* review. Accordingly, the court does not order production of US_SPRUCE0834810-14.

24

US_SPRUCE0859705-10 contains US_SPRUCE0834810-14 in full, and the top redaction on page US_SPRUCE0859705 comes from a new email in the same email thread.  The court's *in camera* review confirmed that the additional redaction falls within the purview of the privilege, and that it does not run contrary to the information the EPA told Plaintiffs or placed in the administrative record.  Thus, the court does not order production of US_SPRUCE0859705-10, either.

3.    <u>US_SPRUCE0837276-77</u>

The Government also produced a redacted version of US_SPRUCE0837276-77.[21]  The unredacted portions of this document "describe a meeting at which representatives of Plaintiffs were present," and the Government contends "the redacted portions are . . . EPA's internal deliberations regarding that meeting."  ECF No. 155 at 27.  Based on the court's *in camera* review, the redacted material is deliberative and pre-decisional within the ambit of the privilege.  Further, the redacted material is consistent with the evidence in the record and the information shared with Plaintiffs, so like the documents discussed *supra* Section III.F.2, Plaintiffs do not establish a sufficient need to overcome the Government's privilege.  Accordingly, the court does not order production of US_SPRUCE0837276-77.

**G.    Subcategory 1.9**

Plaintiffs seek twenty-two documents falling into subcategory 1.9.[22]  ECF No. 150-23 at 5-6.  Documents in subcategory 1.9 are draft litigation[23] filings, internal agency communications, and draft briefing materials that contain "intra-agency and/or inter-agency deliberations regarding what position the Federal government should take in connection with a summary judgment motion filed in litigation challenging the Corps' issuance of the CWA Section 404 permit."  ECF No. 155-11 at ¶ 36; ECF No. 155-12 at ¶ 34.  The Government argues against disclosure of the documents in this subcategory because such disclosure would "interfere with the EPA's ability to coordinate with other agencies regarding policy actions before they have been finally formulated or adopted" and interfere with agency staff deliberations about "external high-profile policy actions" and "actions in litigation that have a bearing on the decision making process for the Agency's own actions."  ECF No. 155-11 at ¶ 36; ECF No. 155-12 at ¶ 34.  The court discusses the privilege determinations for the twenty-two documents that fall into subcategory 1.9 documents below.

1.    <u>US_SPRUCE2716305-06, US_SPRUCE2716307-09,</u><br><u>US_SPRUCE2647487-88, and US_SPRUCE2647490-92</u>

---

[21] US_SPRUCE0837276-77 also falls under subcategory 1.4.  ECF No. 150-23 at 7.

[22] Some of these documents fall into other subcategories, too.  The court notes those documents and their other subcategories as applicable throughout this discussion.

[23] Because the Government does not assert any litigation privilege (i.e. attorney-client communication or attorney work product) related to these documents, the court only considers their protection under the deliberative process privilege.

Plaintiffs seek four related documents that discuss "options" for the Spruce mine permit—US_SPRUCE2716305-06, US_SPRUCE2716307-09, US_SPRUCE2647487-88, and US_SPRUCE2647490-92.[24]  Based on the court's *in camera* review, US_SPRUCE2716305-06 is an email transmitting a draft document, US_SPRUCE2716307-09, containing "options" for the Spruce mine permit involved in the ongoing summary judgment litigation before a district court.  US_SPRUCE2647487-88 contains US_SPRUCE2716305-06 in full and continues the same email thread with a forwarding email containing further deliberations.  US_SPRUCE2647490-92 is the attachment to US_SPRUCE2647487-88, and it is an updated version of US_SPRUCE2716307-09 with redlines.  These documents discussing potential next steps and weighing several options fall under the privilege.

Turning to Plaintiffs' evidentiary need, Plaintiffs seek these documents to "illuminate the options that EPA considered" for the Spruce mine permit and its reasons for initiating the process under its Section 404(c) authority to withdraw the permit.  ECF No. 150 at 21.  While these documents provide insight into the options that the EPA considered, the deliberative process privilege aims to protect exactly such documents.  *See In re United States*, 678 F. App'x at 988 (protecting an internal draft memorandum containing agency staff views on proposed legislation); *Kaiser Aluminum*, 157 F. Supp. at 945-46 (justifying the application of the privilege to "[f]ree and open comments on the advantages and disadvantages of a proposed course of governmental" action).  Further, the court's *in camera* review confirmed these documents do not support Plaintiffs' taking claim.  Thus, to the extent the first and second *Dairyland* factors favor Plaintiffs for these documents, those factors have minimal weight given these documents do not support Plaintiffs' claim.  In light of the potential harm to the Government from disclosure, ECF No. 155-11 at ¶ 36; ECF No. 155-12 at ¶ 34, the balance of the *Dairyland* factors favors the Government.  Accordingly, the court does not order production of US_SPRUCE2647487-88, US_SPRUCE2716305-06, US_SPRUCE2647490-92, and US_SPRUCE2716307-09.

### 2.    US_SPRUCE2424736 and US_SPRUCE0803795

Plaintiffs seek production of two documents, US_SPRUCE2424736 and US_SPRUCE0803795, that the Government's privilege log describes as draft "talking points" that contain "internal, pre-decisional deliberations regarding potential environmental impacts of the Spruce No. 1 Mine."  ECF No. 155-8 at 7, 11; *see also* ECF No. 150-1 at 7.  Based on the court's *in camera* review, these two documents are identical and fall under the privilege.

Seeking to overcome the privilege, Plaintiffs argue these documents will help them determine whether the EPA had a "good-faith basis . . . to treat Spruce differently than other

---

[24] US_SPRUCE2647487-88, US_SPRUCE2716305-06, US_SPRUCE2647490-92, and US_SPRUCE2716307-09 also fall under subcategory 1.1.1.  ECF No. 150-23 at 6.  These four documents are part of Plaintiffs' "Group 2," and many of the other "Group 2" documents only fall under subcategory 1.9.  *See* ECF No. 150 at 20-22; ECF No. 150-23 at 5-6.  Accordingly, the court analyzes these four documents under subcategory 1.9.

surface mines in the region whose permits EPA ultimately did not seek to revoke."[25]  ECF No. 150 at 21.  Further, these documents purportedly would help "assess[] the character of EPA's decision and whether it forced Plaintiffs to bear a disproportionate and unfair burden."  *Id.*  While these documents are relevant to the present litigation for the reasons stated by Plaintiffs, the court's *in camera* review confirmed they do not provide unique evidence about why the EPA proceeded with the Spruce mine permit; rather, these documents are consistent with other available evidence in the case that the EPA had environmental concerns that motivated the Section 404(c) process.  *See, e.g.*, ECF No. 155-9.  Further, disclosure of these documents risks harm to the Government by interfering with agency staff debates.  ECF No. 155-11 at ¶ 36; ECF No. 155-12 at ¶ 34.  Accordingly, Plaintiffs do not establish a sufficient need for these documents to outweigh the Government's risk of harm.  Thus, the *Dairyland* factors weigh in favor of the Government, so the court does not order production of US_SPRUCE2424736 and US_SPRUCE0803795.

3.    US_SPRUCE2116853-55, US_SPRUCE2116849-51, US_SPRUCE0836671-74, US_SPRUCE0809233-35, and US_SPRUCE0738509-12

Plaintiffs seek five documents related to an email from Mr. Peck.  *See* ECF No. 155-8 at 3, 8, 11.  Plaintiffs argue these documents are relevant to determining whether the EPA's "renewed attention" on the Spruce mine permit resulted from the contemporaneous 2009 litigation and whether the EPA came up with its justification for invoking its Section 404(c) authority after the fact.  ECF No. 150 at 22.  The court addresses these five documents in turn.

a)    *US_SPRUCE2116853-55 and US_SPRUCE2116849-51*

The Government produced a redacted version of US_SPRUCE2116853-55.  The redacted portion is an email from Mr. Peck containing internal deliberations about "environmental impacts from Spruce No. 1 and how [the Government] will respond to pending summary judgment motion."  ECF No. 150-1 at 8; ECF No. 155-8 at 11, 23.  The Government also produced a redacted version of US_SPRUCE2116849-51, which contains US_SPRUCE2116853-55 in full with an additional email from Ms. Jackson's Richard Windsor alias.  Because the redactions to US_SPRUCE2116853-55 and US_SPRUCE2116849-51 are identical, the court considers them together.

While the redactions are relevant to the litigation, Plaintiffs do not establish a sufficient need for the redacted material given the availability of other evidence, including US_SPRUCE0836671-74 in its unredacted form discussed *infra* Section III.G.3.b, and the Government's risk of harm from disclosure.  Thus, the *Dairyland* factors weigh in favor of the

---

[25] US_SPRUCE2424736 and US_SPRUCE0803795 also fall under subcategory 1.1.1.  ECF No. 150-23 at 6.  These two documents are part of Plaintiffs' "Group 2," and many of the other "Group 2" documents only fall under subcategory 1.9.  *See* ECF No. 150 at 20-22; ECF No. 150-23 at 5-6.  Accordingly, the court analyzes these two documents under subcategory 1.9.

Government, so the court does not order production of US_SPRUCE2116853-55 and US_SPRUCE2116849-51.

### b)    US_SPRUCE0836671-74

The Government produced a redacted version of US_SPRUCE0836671-74, which is an email from Mr. Peck containing internal deliberations, ECF No. 150-1 at 8; ECF No. 155-8 at 8, 19, that fall under the privilege.  Plaintiffs seek this document to discern whether the EPA's invocation of its Section 404(c) authority has other, non-scientific motivations, and whether the EPA "contrived" its scientific justification afterwards.  ECF No. 150 at 22.  The redacted material is relevant to the litigation for the reasons stated by Plaintiffs as it indicates a non-scientific consideration for the EPA's action with respect to the Spruce mine permit, so the first *Dairyland* factor favors Plaintiffs.  Turning to the other *Dairyland* factors, the second factor, other available evidence, favors Plaintiffs because Plaintiffs argue the evidence they seek of the EPA's consideration of non-scientific justifications for invoking Section 404(c) is not available via other means.  ECF No. 150 at 29-31.  The third factor does not favor either Party, and the fourth factor favors Plaintiffs.  *See supra* Part II.  The fifth *Dairyland* factor—risk of agency staff timidity—favors the Government because the Government risks interference with agency staff deliberations about "external high-profile policy actions" and "actions in litigation that have a bearing on the decision making process for the Agency's own actions."  ECF No. 155-11 at ¶ 36; ECF No. 155-12 at ¶ 34.  Considering the five *Dairyland* factors together, Plaintiffs have made a strong showing of evidentiary need for the final sentence in the email on page US_SPRUCE0836674, which begins: "This mine . . . ."  That sentence indicates the EPA may have had non-scientific reasons to invoke Section 404(c) to withdraw part of the Spruce mine permit, and Plaintiffs have shown a strong evidentiary need for such evidence.  There is also no indication before the court that Plaintiffs have any other means of getting such information from other sources.  Consequently, the Government must produce a version of US_SPRUCE0836671-74 that does not redact the last sentence of Mr. Peck's email on page US_SPRUCE0836674, but the Government may otherwise maintain the rest of the redactions.

### c)    US_SPRUCE0809233-35 and US_SPRUCE0738509-12

Two documents—US_SPRUCE0809233-35 and US_SPRUCE0738509-12—contain the same email from Mr. Peck from US_SPRUCE0836671-74, discussed *supra* Section III.G.3.b.  In US_SPRUCE0809233-35, Mr. Peck forwards his initial email to Matthew Klasen from CEQ.[26] ECF No. 150-1 at 7; ECF No. 155-8 at 19.  US_SPRUCE0738509-12 contains US_SPRUCE0809233-35 in full with a reply email from Mr. Klasen.  ECF No. 150-1 at 7; ECF No. 155-8 at 3, 15.  The emails between Mr. Peck and Mr. Klasen in US_SPRUCE0809233-35 and US_SPRUCE0738509-12 are protected under the privilege as deliberative and pre-decisional, but the initial email from Mr. Peck contains the same language from US_SPRUCE0836671-74—the sentence beginning: "This mine . . . ."  As a result, the

---

[26] US_SPRUCE0809233-35 also falls in subcategory 1.1.1.  ECF No. 150-23 at 6.  Given that US_SPRUCE0738509-12 contains US_SPRUCE0809233-35 in full, and US_SPRUCE0738509-12 only falls in subcategory 1.9, the court analyzes US_SPRUCE0809233-35 in tandem with US_SPRUCE0738509-12.

Government must produce US_SPRUCE0809233-35 and US_SPRUCE0738509-12 for the same reasons discussed *supra* Section III.G.3.b, but it may redact all text but the last sentence in the initial email from Mr. Peck on pages US_SPRUCE0809234 and US_SPRUCE0738512 that begins: "This mine . . . ."

> ### 4.  US_SPRUCE0740576-78, US_SPRUCE0743970, US_SPRUCE0743984, US_SPRUCE0761788-89, US_SPRUCE0743989-90, US_SPRUCE0805237, US_SPRUCE0837551, US_SPRUCE2117407, and US_SPRUCE0801477

Plaintiffs seek production of nine documents that they assert "reflect[] intra-agency and/or inter-agency deliberations regarding what position the Federal government should take in connection with a summary judgment motion filed in litigation challenging the Corps' issuance of the CWA Section 404 permit." ECF No. 150 at 22. Plaintiffs argue these documents are relevant to determining whether the EPA's "renewed attention" on the Spruce mine permit in 2009 resulted from the change in administration, as Plaintiffs argue, or from Mingo Logan filing a summary judgment motion in contemporaneous litigation challenging the Spruce mine permit, as the Government argues. *See id.*; ECF No. 127 at 4. The Government claims that "these documents all concern litigation strategy and summary judgment briefing in other litigation" involving the Spruce mine permit and do not contain the "EPA's reasons for taking the § 404(c) action." ECF No. 155 at 24. Consequently, the Government argues Plaintiffs have no compelling need for these documents. *Id.*

> ### a)    *US_SPRUCE0740576-78*

US_SPRUCE0740576-78 is an email thread containing "internal discussion of EPA views of Spruce case, legal strategy, and" a portion of a draft brief, ECF No. 150-1 at 5; ECF No. 155-8 at 3, which all fall under the protection of the privilege. The court's *in camera* review revealed the email thread largely focuses on the pending summary judgment litigation, so it has minimal relevance to the present litigation. Likewise, other available evidence, including the parties' briefing in the summary judgment litigation, reveals the EPA's position in that litigation. Thus, the first two *Dairyland* factors weigh in favor of the Government. The third factor does not favor either Party, and the fourth factor favors Plaintiffs. *See supra* Part II. Finally, the fifth factor on the risk of agency staff timidity favors the Government as disclosure risks interfering with the agency's decision-making process in pending litigation. ECF No. 155-11 at ¶ 36; ECF No. 155-12 at ¶ 34. Because the balance of the *Dairyland* factors favors the Government, Plaintiffs do not establish a sufficient need for the email thread to overcome the Government's privilege. Accordingly, the court does not order production of US_SPRUCE0740576-78.

> ### b)    *US_SPRUCE0743970*

The redaction from US_SPRUCE0743970 "summarizes conversations with representatives of Army Corps and DOJ regarding . . . litigation strategy," ECF No. 150-1 at 6; ECF No. 155-8 at 4, which falls within the purview of the privilege. The court's *in camera* review confirmed the redaction focuses on litigation strategy, consistent with the Government's privilege log. Thus, like the document discussed *supra* Section III.G.4.a, Plaintiffs do not

establish a sufficient need for the redacted material, so the court does not order production of US_SPRUCE0743970.

### c)    *US_SPRUCE0743984*

US_SPRUCE0743984 is an email thread containing "inter-agency deliberations" about the EPA's concerns about the Spruce mine permit in light of ongoing litigation.  ECF No. 150-1 at 6; ECF No. 155-8 at 4.  The court's *in camera* review confirmed this document falls under the privilege and does not indicate the EPA's concerns resulted from the change in administration; rather, it is consistent with the Government's position that the EPA's focus on the Spruce mine permit related to the ongoing litigation.  Like the documents discussed *supra* Sections III.G.4.a and III.G.4.b, this document does not provide evidence to support Plaintiffs' taking claim, so the court does not order production of US_SPRUCE0743984.

### d)    *US_SPRUCE0761788-89 and US_SPRUCE0743989-90*

Two documents—US_SPRUCE0761788-89 and US_SPRUCE0743989-90—come from a single email thread.  The redactions on page US_SPRUCE0743989 of US_SPRUCE0743989-90 contain the substance of US_SPRUCE0761788-89 in full.  The withheld document, US_SPRUCE0761788-89, and the corresponding redactions in US_SPRUCE0743989-90 contain inter-agency litigation strategy deliberations regarding the ongoing litigation challenging the Spruce mine permit.[27]  ECF No. 150-1 at 7; ECF No. 155-8 at 4-5.  Consistent with the other documents discussed above, these documents fall under the privilege and do not reveal an alternative explanation for the EPA's interest in the Spruce mine permit other than the ongoing litigation.  Thus, Plaintiffs do not establish a sufficient need to overcome the Government's privilege.  The court does not order production of US_SPRUCE0761788-89 and US_SPRUCE0743989-90.

### e)    *US_SPRUCE0805237, US_SPRUCE0837551, US_SPRUCE2117407, and US_SPRUCE0801477*

US_SPRUCE0805237 consists of "interagency deliberations regarding formulation of 404 permitting strategy" for the Spruce mine, ECF No. 150-1 at 7; ECF No. 155-8 at 7, and it falls under the privilege.  The court's *in camera* review of this document also confirmed it does not indicate the EPA's interest in the Spruce mine permit stemmed from any other reason than the ongoing litigation, so Plaintiffs do not establish a sufficient need for this document.

The court's *in camera* review revealed that US_SPRUCE0837551 and US_SPRUCE2117407 are identical to US_SPRUCE0805237, differing only in the bcc-line.  The redacted email in US_SPRUCE0801477 is also identical to the email in US_SPRUCE0805237,

---

[27] US_SPRUCE0743989-90 also falls in subcategory 1.1.1.  ECF No. 150-23 at 6.  Given the redactions in US_SPRUCE0743989-90 are the same as the information withheld in document US_SPRUCE0761788-89, and US_SPRUCE0761788-89 only falls in subcategory 1.9, the court analyzes US_SPRUCE0743989-90 in tandem with US_SPRUCE0761788-89.

as this document merely shows Mr. Peck forwarding the email from US_SPRUCE0805237. Accordingly, the court does not order production of US_SPRUCE0805237, US_SPRUCE0837551, US_SPRUCE2117407, and US_SPRUCE0801477.

    5.    US_SPRUCE0837061-63 and US_SPRUCE0837064-67

    The Government produced redacted versions of two documents, US_SPRUCE0837061-63 and US_SPRUCE0837064-67, from a single email thread.  The majority of the redactions on pages US_SPRUCE0837061-62 are "non-responsive," and the rest of the redactions on page US_SPRUCE0837061 are "internal pre-decisional agency deliberations concerning formulation of . . . strategy . . . specifically concerning the Spruce Mine."  ECF No. 150-1 at 8; ECF No. 155-8 at 9.  Based on the court's *in camera* review, the non-responsive redacted material is not relevant to this litigation, and the material discussing the Spruce mine permit falls under the scope of the privilege.

    With respect to Plaintiffs' evidentiary need for the redactions discussing the Spruce mine permit, Plaintiffs argue the redactions are "relevant to assessing the character and nature of EPA's decision through the lens of the highest-level officials in the agency."  ECF No. 150 at 22.  While the redactions provide such relevant evidence, the redactions are consistent with other available evidence in this case that the EPA asked the Corps to suspend the Spruce mine permit based on the Pond study and other new scientific information.  *See* ECF No. 155-9.  With respect to the third and fourth *Dairyland* factors, the third factor does not favor either Party, and the fourth factor favors Plaintiffs.  *See supra* Part II.  Finally, the fifth factor favors the Government because disclosure risks chilling EPA staff debates of actions in surrounding litigation.  ECF No. 155-11 at ¶ 36; ECF No. 155-12 at ¶ 34.  Weighing the factors together, the factors favor the Government, so Plaintiffs do not establish a sufficient need for the redactions to overcome the Government's privilege.  Accordingly, the court does not order production of US_SPRUCE0837061-63.

    US_SPRUCE0837064-67 contains US_SPRUCE0837061-63 in full on pages US_SPRUCE0837065-67 and continues the email thread on page US_SPRUCE0837064 with three additional emails.  Based on the court's *in camera* review, the additional emails on page US_SPRUCE0837064 are non-responsive to Plaintiffs' request and pertain to matters other than the present litigation.  Thus, the court does not order production of US_SPRUCE0837064-67.

**H.    Subcategory 1.11**

    Six of the documents Plaintiffs seek fall into subcategory 1.11.  ECF No. 150-23 at 5-6.  Subcategory 1.11 covers internal EPA communications and draft letters related to "policy recommendations regarding EPA's response to the Corps of Engineers' proposed issuance of the CWA Section 404 and/or EPA's response to the draft Environmental Impact Statement for the Spruce No. 1 mine."  ECF No. 155-11 at ¶ 38.  The Government argues disclosure of these documents would chill EPA staff collaboration, interfere with staff debates on the "content and nature of external high-profile policy actions before they have been finally formulated or adopted," and "cause public confusion" by releasing "pre-decisional versions of comment letters

. . . [that] inaccurately reflect[] the views of the Agency, views that would be reflected only in the final version." *Id.*

1.  US_SPRUCE2414023-27, US_SPRUCE2474311-15,
US_SPRUCE2474319-23, US_SPRUCE2474308-09, and US_SPRUCE2427977

Plaintiffs seek production of five documents—an email, US_SPRUCE2414023-27, two draft letters, US_SPRUCE2474311-15 and US_SPRUCE2474319-23, an email transmitting the draft letter, US_SPRUCE2474308-09, and redacted portions of a draft EIS, US_SPRUCE2427977—that include the "EPA's review of and comments on the Corps' EIS for the Spruce mine." ECF No. 150 at 24. Plaintiffs seek these documents for their relevance "to determining whether the EIS—which concluded that Spruce would have only a minimal impact on water quality and would actually result in a net gain of waters of the United States, [ECF No. 150-8]—fairly captured EPA's views, such that its abrupt reversal just two years later could be explained only by political considerations." ECF No. 150 at 24. The Government contends the EPA did not change course when it sought to withdraw the Spruce mine permit because the "EPA's concerns were not resolved to its satisfaction prior to the issued of [the] § 404 permit by the Corps." ECF No. 155 at 27. Accordingly, the Government argues Plaintiffs have no evidentiary need for these documents. *Id.*

a)    *US_SPRUCE2414023-27*

The Government produced a redacted version of US_SPRUCE2414023-27. The redactions on page US_SPRUCE2414026 contain "internal, pre-decisional deliberations regarding EPA comments and rating on draft Spruce EIS," ECF No. 150-1 at 13; ECF No. 155-8 at 11, which fall under the privilege. Based on the court's *in camera* review, the redactions are relevant to this litigation, so the first *Dairyland* factor favors Plaintiffs. Regardless, the redactions do not contain any information to indicate the EPA's revocation of the Spruce mine permit was contrary to its view in 2006 prior to the issuance of the permit, and the redactions are consistent with other available evidence that indicates the EPA raised concerns about the Spruce mine permit prior to issuance of the permit. *See Mingo Logan*, 70 F. Supp. 3d at 158-59. The third factor does not favor either Party, and the fourth factor favors Plaintiffs. *See supra* Part II. Further, disclosure of the redacted material risks hurting collaboration on agency policy actions. ECF No. 155-11 at ¶ 38. On balance, the factors favor the Government, so Plaintiffs do not establish a sufficient need for the redactions. The court does not order production of US_SPRUCE2414023-27.

b)    *US_SPRUCE2474308-09, US_SPRUCE2474311-15, and US_SPRUCE2474319-23*

Plaintiffs seek an email, US_SPRUCE2474308-09, transmitting the draft letter, US_SPRUCE2474311-15. ECF No. 150 at 24. The privilege log describes the transmitting email to contain "internal, pre-decisional deliberations regarding Draft Spruce No. 1 EIS," ECF No. 150-1 at 13-14; ECF No. 155-8 at 12, and the court's *in camera* review confirmed the transmitting email falls under the scope of the privilege. For the same reasons discussed *supra* Section III.H.1.a, Plaintiffs do not establish a sufficient need for the EPA's views prior to the issuance of the permit to overcome the Government's privilege claimed for the transmitting

email because the transmitting email is consistent with other available evidence supporting the Government's position that the EPA had concerns prior to the issuance of the permit. Thus, the *Dairyland* factors weigh in favor of the Government, so the court does not order production of US_SPRUCE2474308-09.

The attached draft letter, US_SPRUCE2474311-15, "contains internal, pre-decisional deliberations regarding Spruce Mine No. 1 EIS." ECF No. 150-1 at 14; ECF No. 155-8 at 12. US_SPRUCE2474319-23 is a duplicate copy of the draft letter in US_SPRUCE2474311-15. As copies of draft letters, these two documents fall within the core protection of the deliberative process privilege. For the same reasons provided above for the transmitting email, the court does not order production of the draft letters in US_SPRUCE2474311-15 and US_SPRUCE2474319-23.

### c)    US_SPRUCE2427977

The Government's privilege log indicates US_SPRUCE2427977 "contains internal, pre-decisional deliberations regarding EPA's rating and comments on the draft []EIS for Spruce No. 1," ECF No. 150-1 at 14; ECF No. 155-8 at 12, which fall under the scope of the privilege. Like the documents discussed *supra* Sections III.H.1.a and III.H.1.b, Plaintiffs do not establish a sufficient need to overcome the Government's privilege over this document because it is consistent with other available evidence supporting the Government's position. Accordingly, the court does not order production of US_SPRUCE2427977.

### 2.    US_SPRUCE2495756

Plaintiffs seek production of an email, US_SPRUCE2495756, dated January 24, 2007, just after the Corps granted the Spruce mine permit. ECF No. 150-1 at 14; ECF No. 155-8 at 12, 24. The document contains "internal, pre-decisional deliberations in a draft write up regarding the Spruce Mine and activities and next steps for the EPA and the Army Corps of Engineers," ECF No. 150-1 at 14; ECF No. 155-8 at 12, which are within the purview of the privilege.

Plaintiffs argue this document is "relevant to determining the nature of EPA's remaining concerns, if any, after the permit was granted and whether the concerns that ultimately caused EPA to revoke the permit existed prior to the change in administration or only after." ECF No. 150 at 24. The Government argues Plaintiffs have no need for the document because the "EPA's environmental concerns regarding Spruce pre-dated the 2007 permit and were not fully resolved at that time and that evolving science formed the basis for EPA's additional concerns." ECF No. 155 at 28. Based on the court's *in camera* review, the document does not run contrary to the Government's argument that the EPA had concerns about the Spruce mine permit that predate the change in administration. As a result, this document is minimally relevant for the reason Plaintiffs seek it; however, other available evidence supports the Government's position, *see Mingo Logan*, 70 F. Supp. 3d at 158-59. The third factor does not favor either Party, and the fourth factor favors Plaintiffs. *See supra* Part II. Further, the disclosure of this document may cause agency staff timidity by releasing pre-decisional documents that do not reflect "the views of the Agency," ECF No. 155-11 at ¶ 38, so the fifth factor favors the Government. On balance, the *Dairyland* factors favor the Government, so Plaintiffs do not establish a sufficient need for

this document to overcome the Government's privilege.  Accordingly, the court does not order production of US_SPRUCE2495756.

## I.    Category 3

Plaintiffs seek five documents comprising parts of an email thread—US_SPRUCE0744555-57, US_SPRUCE1728195-97, US_SPRUCE1728198-200, US_SPRUCE1728201-03, and US_SPRUCE1728204-08—that Plaintiffs argue reflect how the EPA "formulat[ed]" its "policy decisions regarding whether to take action under CWA Section 404(c) with respect to the Spruce No. 1 Mine."  ECF No. 150 at 23-24; ECF No. 155-8 at 4, 10-11.  These documents fall under category 3, which covers drafts and communications "regarding communications to external parties" and "reflect policy deliberations related to specific decision points for future policy actions."  ECF No. 155-11 at ¶ 49; ECF No. 155-11 at ¶ 41.  According to Plaintiffs, these emails "are fundamentally relevant to determining how and why the highest-level officials at EPA decided to invoke" its Section 404(c) authority, "which is necessary to assess the nature and character of EPA's decision."  ECF No. 150 at 24.  The Government argues these emails "do not concern the *reasons* for EPA's action so much as questions about timing and how and to whom to communicate its decision," which the Government posits are irrelevant to Plaintiffs' claims.  ECF No. 155 at 26.

### 1.    US_SPRUCE1728195-97 & US_SPRUCE1728198-200

As the Government argues, US_SPRUCE1728195-97 discusses communication of the EPA's decision rather than the reasons for the EPA's decision.  *See* ECF No. 155 at 26; ECF No. 155-11 at ¶ 49; ECF No. 155-12 at ¶ 41.  Thus, the document is not relevant to the present litigation as Plaintiffs posit.

US_SPRUCE1728198-200 contains US_SPRUCE1728195-97 in full and continues the email thread with an additional email relating to the timing to communicate the EPA's decision.  Thus, Plaintiffs do not establish a sufficient need for either of these documents, so the court does not order production of US_SPRUCE1728195-97 and US_SPRUCE1728198-200.

### 2.    US_SPRUCE0744555-57

The Government produced a redacted version of US_SPRUCE0744555-57, which contains US_SPRUCE1728195-97 in full.  The redactions on pages US_SPRUCE0744556-57 come from US_SPRUCE1728195-97, so the court does not order production of those redactions for the same reasons stated *supra* Section III.I.1.  The redaction on page US_SPRUCE0744555 also concerns the timing of communications about the EPA's decision, so Plaintiffs do not establish a sufficient need for that redaction.  Accordingly, the *Dairyland* factors weigh in favor of the Government, so the court does not order production of US_SPRUCE0744555-57.

### 3.    US_SPRUCE1728201-03 and US_SPRUCE1728204-08

The other two documents, US_SPRUCE1728201-03 and US_SPRUCE1728204-08, come from one email thread.  US_SPRUCE1728201-03 contains emails that, like the emails discussed *supra* Sections III.I.1 and III.I.2, discuss further details about the timing of communications.  Like the documents discussed *supra* Sections III.I.1 and III.I.2, Plaintiffs do

not establish a sufficient need for US_SPRUCE1728201-03.  US_SPRUCE1728204-08 contains US_SPRUCE1728201-03 in full, but the first two pages of this document contain new emails from this thread.  Regardless, like the other emails in this thread, the new emails in US_SPRUCE1728204-08 address timing and communication strategy without any discussion of the nature or character of the EPA's decision, so Plaintiffs also do not establish a sufficient need for the new emails.  Accordingly, the court does not order production of US_SPRUCE1728201-03 and US_SPRUCE1728204-08.

## J.    Subcategory 4.1

Lastly, Plaintiffs seek two emails, US_SPRUCE1799677 and US_SPRUCE2274439-40, that relate to "whether EPA should approve publication of the 2008 Pond study which served as a basis for EPA's [revocation] decision."  ECF No. 150 at 25.  These documents fall under subcategory 4.1, which covers internal EPA communications about the "process of publishing" the Pond study.  ECF No. 155-11 at ¶ 61.  Plaintiffs argue these documents are relevant to determining "whether—and, if so, how—EPA thought at the time of publication that the Pond study justified further action with respect to the Spruce mine, or whether it reached that conclusion only after the change in administration."  ECF No. 150 at 25.  The Government highlights that the Spruce mine permit was subject to a standstill agreement at the time that curtailed mine operations, so the "EPA . . . had no reason to consider immediate action with respect to Spruce."  ECF No. 155 at 28.  Further, the Government produced all the new information used to justify its decision, and these documents contain "deliberations regarding potential publication of the draft manuscript [with] no indication that these documents even discuss the Spruce No. 1 Mine."  *Id.*  In addition, the Government argues disclosure would harm the EPA by inhibiting "EPA scientists from pursuing publication of their data and analysis in peer reviewed journals."  ECF No. 155-11 at ¶ 61.

### 1.    US_SPRUCE1799677

Plaintiffs seek an email, US_SPRUCE1799677, containing "internal, pre-decisional deliberations regarding potential publication of" the Pond study, ECF No. 150-1 at 14; ECF No. 155-8 at 11, which falls within the scope of the privilege.  *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (applying the deliberative process privilege to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"); *Formaldehyde Inst. v. Dep't of Health & Hum. Servs.*, 889 F.2d 1118, 1123 (D.C. Cir. 1989) (deciding "a recommendation (with suggestions) regarding an article's suitability for publication" is pre-decisional).  Based on the court's *in camera* review, this document does not discuss the Spruce mine permit, and its discussion of the study is not relevant to this case.  Thus, the first *Dairyland* factor favors the Government.  Plaintiffs have the Pond study in its final published form, *see* ECF No. 150 at 7 n.6, so they do not need pre-decisional deliberations about the Pond study in light of the other available evidence.  The third factor does not favor either Party, and the fourth factor favors Plaintiffs.  *See supra* Part II.  Finally, the risk of agency staff timidity favors the Government because disclosure of this document could harm the publication process for agency scientists.  ECF No. 155-11 at ¶ 61.  Consequently, the balance of the *Dairyland* factors favors the Government, so Plaintiffs do not establish a sufficient need for this

document to overcome the Government's privilege.  The court does not order production of US_SPRUCE1799677.

### 2.    US_SPRUCE2274439-40

The last document, US_SPRUCE2274439-40, contains emails about a "manuscript for publication approval and internal pre-decisional deliberations regarding whether to approve publication of" the Pond study, ECF No. 150-1 at 14; ECF No. 155-8 at 11, which falls within the purview of the privilege like US_SPRUCE1799677, discussed *supra* Section III.J.1.  Like US_SPRUCE1799677, this document does not discuss the Spruce mine permit, and its discussion of publication of the study is not relevant to this case.  Thus, Plaintiffs do not establish a sufficient need for this document, so the court does not order production of US_SPRUCE2274439-40.

## IV.    Conclusion

For the foregoing reasons, the court:

1. Denies-as-moot Plaintiffs' motion to compel, ECF No. 149, with respect to documents US_SPRUCE2461821, US_SPRUCE2521439, and US_SPRUCE0745644;
2. Denies Plaintiffs' motion to compel, ECF No. 149, with respect to documents US_SPRUCE0699386-89, US_SPRUCE0703749, US_SPRUCE0722169-73, US_SPRUCE0735529-30, US_SPRUCE0740576-78, US_SPRUCE0742705, US_SPRUCE0742775-76, US_SPRUCE0743931, US_SPRUCE0743970, US_SPRUCE0743984, US_SPRUCE0743985-86, US_SPRUCE0743989-90, US_SPRUCE0744555-57, US_SPRUCE0744658-60, US_SPRUCE0745642, US_SPRUCE0755339, US_SPRUCE0758190-91, US_SPRUCE0759610-11, US_SPRUCE0760574-77, US_SPRUCE0760578-81, US_SPRUCE0760990-91, US_SPRUCE0761041, US_SPRUCE0761787, US_SPRUCE0761788-89, US_SPRUCE0762320-22, US_SPRUCE0766119, US_SPRUCE0766227, US_SPRUCE0768402, US_SPRUCE0796302-05, US_SPRUCE0800514-18, US_SPRUCE0801477, US_SPRUCE0801506, US_SPRUCE0801508-14, US_SPRUCE0802364, US_SPRUCE0802610, US_SPRUCE0802612-14, US_SPRUCE0803795, US_SPRUCE0805237, US_SPRUCE0834810-14, US_SPRUCE0835195, US_SPRUCE0835214, US_SPRUCE0835222, US_SPRUCE0837061-63, US_SPRUCE0837064-67, US_SPRUCE0837200-01, US_SPRUCE0837276-77, US_SPRUCE0837287-88, US_SPRUCE0837550, US_SPRUCE0837551, US_SPRUCE0837553, US_SPRUCE0859705-10, US_SPRUCE0859788, US_SPRUCE0859789, US_SPRUCE0859794, US_SPRUCE0859828-29, US_SPRUCE1728195-97, US_SPRUCE1728198-200, US_SPRUCE1728201-03, US_SPRUCE1728204-08, US_SPRUCE1740305-07, US_SPRUCE1799677, US_SPRUCE2116814-15, US_SPRUCE2116817, US_SPRUCE2116849-51, US_SPRUCE2116853-55, US_SPRUCE2117407, US_SPRUCE2274439-40, US_SPRUCE2414023-27, US_SPRUCE2424736, US_SPRUCE2427977, US_SPRUCE2428008, US_SPRUCE2474308-09,

US_SPRUCE247311-15, US_SPRUCE2474319-23, US_SPRUCE2495756, US_SPRUCE2647487-88, US_SPRUCE2647490-92, US_SPRUCE2716305-06, US_SPRUCE2716307-09, US_SPRUCE2716615, US_SPRUCE2716616-18; and

3. Grants-in-part Plaintiffs' motion to compel, ECF No. 149, with respect to documents US_SPRUCE0738509-12, US_SPRUCE0743953-54, US_SPRUCE0804770-72, US_SPRUCE0805235-36, US_SPRUCE0809233-35, US_SPRUCE0809333-34, US_SPRUCE0835198-200, US_SPRUCE0836671-74, US_SPRUCE0836946-48, US_SPRUCE0836949-52, US_SPRUCE0837195-97.

It is so ORDERED.

<u>s/ Edward H. Meyers</u>
Edward H. Meyers
Judge